(Decided 31st January, 1879.)

---

THE PHILADELPHIA, WILMINGTON AND BALTIMORE
RAILROAD CO. *vs.* THE APPEAL TAX COURT OF
BALTIMORE CITY. THE APPEAL TAX COURT OF
BALTIMORE CITY *vs.* THE PHILADELPHIA, WIL-
MINGTON AND BALTIMORE RAILROAD CO.

*Assessment of Leasehold Interest, where the Reversion, not liable to be Taxed, is in the Mayor and City Council of Baltimore—Construction of a Covenant to pay Taxes by a Lessee—Improvements on each Lot of Ground, subject to Separate Assessment—Situs for the Assessment of the Roll-ing Stock of a Railroad Company.*

Where the City of Baltimore had leased two lots of ground to the
P., W. & B. R. R. Co., for ninety-nine years, renewable forever, and
which lots were improved by the lessee, by the erection thereon of
depots, shops, &c. HELD:

That under the Acts of 1876, ch. 159 and ch. 260, the P., W. & B. R.
R. Co., should be assessed only with the value of the leasehold
estate, subject to the rent reserved in the lease; the interest and
estate of the city in the premises being exempt by statute from
taxation.

The covenant of the lessee in the leases from the city, " to pay all
taxes, assessments and public dues whatever, levied, charged or
assessed, or that may hereafter be levied, charged or assessed, on the

398 MARYLAND REPORTS.

Phila., Wilm. and Balt. R. R. Co. *vs.* Appeal Tax Court of Balt. City.

premises, or the yearly rent issuing therefrom," is but the usual covenant inserted in leases for the benefit and exoneration of the lessor; and it has reference only to such taxes and assessments as might affect the reversion and its incident, the rent reserved under the lease.

The general principle is, that where the lease is silent upon the subject, the landlord is bound to pay all State and municipal taxes and assessments upon the property; but in this State, it has been made by statute, the duty of the tenant holding any leasehold estate, to pay the taxes levied on the demised premises, and the tenant so paying has been given his right of action to recover such money of the landlord, as money paid for his use, or the right to deduct the same from the rent reserved, unless otherwise agreed. This provision was intended as a means of facilitating the collection of taxes; there being many cases where the landlord might not be known or might be absent.

The improvements placed upon the two lots of ground leased from the city by the P., W. & B. R. R. Co., were subject to separate assessment, and as they were placed upon the demised premises by the lessee for its own use and benefit, they were properly assessed to the lessee at their full assessable value.

The rolling stock of the P., W. & B. R. R. Co., none of which is permanently located in the City of Baltimore, (the principal office and place of business of the company, being in Philadelphia, and the meetings of the directors of the company being held alternately in that city, and in Wilmington where are its workshops and car and engine depots, and seldom any of its engines or cars stay over even a single night in Baltimore,) was not subject to valuation and assessment in the city of Baltimore, under the Act of 1876, ch. 260, sec. 17.

CROSS-APPEALS from the Baltimore City Court.

These cross-appeals were taken by the Philadelphia, Wilmington and Baltimore Railroad Company and the Appeal Tax Court, from an order of the Court below, passed on the 24th June, 1878. The proceedings, in which this order was passed, were instituted by the Railroad Company under the Act of 1876, ch. 260, sec. 28, to have stricken from the list of property valued and assessed to that corporation, as not subject to taxation, certain property owned

by it and mentioned in the opinion of the Court; in which opinion are further stated the facts of this case.

The causes were argued before BARTOL, C. J., MILLER, ALVEY and ROBINSON, J., for the Railroad Company, and submitted for the Appeal Tax Court.

*John J. Donaldson* and *I. Nevett Steele,* for the Philadelphia, Wilmington and Baltimore Railroad Company.

The company's leasehold interest is alone taxable, and the value of the city's interest—*i. e.*, the principal of the ground rent—should be deducted from the whole value of the property, in order to ascertain this leasehold interest; the city's interest being exempt from assessment and taxation as well by established principles of law as expressly by statute, (Acts of 1874, ch. 483, sec. 3; 1876, ch. 260, sec. 2; 1878; ch. 413, sec. 3;) and also exempt at the time the leases were made, by Act of 1841, ch. 23, sec. 1, since incorporated in the Code, Public General Laws, Art. 81, sec. 3.

The usual covenants for payment of taxes contained in the leases can only be taken of taxes *legally* due and demandable on the property in question. 1812, *ch.* 191, *sec.* 36; 1874, *ch.* 483, *sec.* 65; 1878, *ch.* 413, *sec.* 2; *Taylor, Landl. and Ten., secs.* 341, 342, 395; *Woodfall, Landl. and Ten.,* 462.

The rolling stock of the company is not subject to assessment and valuation or taxation in the City of Baltimore, as no part of it is permanently located in the city of Baltimore, or even in the State of Maryland, (*Constitution* 1867, *Dec. Rights, Art.* 15; *Art.* 3, *sec.* 51; *Acts* 1876, *ch.* 159, *sec.* 1; 1876, *ch.* 260, *secs.* 2 *and* 17; 1878, *ch.* 413, *sec.* 2;) and the company is a resident of neither; and there is nothing in its charter submitting the company to such assessment and taxation, if not liable on other grounds. *Hoyt vs. Comm'rs,* 23 *N. Y.,* 224; *Hays vs. S. S. Co.,* 17 *How.,* 599.

Is the owner of this property a resident of the City of Baltimore or State of Maryland?

The effect of the various Acts of the three States of Pennsylvania, Delaware and Maryland must have been either by a joint sovereign act or compact to create *one* corporation; or by a statutory license (irrevocable,) by the later Acts of the other States to give to a corporation of the State passing the first Act the right to carry on business within their borders; or to make a separate corporation in each State, having power to enter into partnership with the others for the joint undertakings specified in the various Acts.

The first construction is very strongly suggested by the the wording of the consolidation Acts of the several States, and has been held by this Court and the Supreme Court accordingly. *Act of Pennsylvania, approved December 19th,* 1837; *Act of Maryland, approved January 20th,* 1838; 1837, *ch.* 30; *State vs. N. C. R. W. Co.,* 44 *Md.,* 131; *Bishop vs. Brainerd,* 28 *Conn.,* 289; *Tax Cases,* 12 *G. & J.,* 149; *Phila., Wilm. and Balto. R. R. Co. vs. Bayless,* 2 *Gill,* 358; *State vs. Phila., Wilm. and Balto. R. R. Co.,* 45 *Md.,* 362; 10 *How.,* 377; 18 *Wall.,* 212; 12 *Wall.* 82.

If it be the correct construction, the corporation so created was a *person*—not with three domiciles; that would be a contradiction in terms—but with the freedom of three States, the right of citizenship, so to speak, in all, and, involved therein, the right to choose its *domicile* from among the three. Such are corporations by Act of Congress. 2 *Brock.,* 393.

Such choice of domicile this corporation has made, by taking Philadephia as the home of its official being.

That such official residence of a corporation is its domicile is shown by many authorities, of which a few are subjoined. *Von Savigny Priv. Int. Law, sec.* 354; *Angell & Ames on Corporations, sec.* 107; *Bank vs. Mackenzie,* 2 *Brock. C. C.,* 393; *R. R. vs. Letson,* 2 *How.,* (*U. S.,*) 497;

*Middletown Ferry Co. vs. Middletown,* 40 *Conn.,* 65 ; *R. R. vs. Fraser,* 4 *Bingh.,* 394 ; *Edwards vs. Union,* 1 *Branch,* 136 ; *McQuin vs. Middletown Man. Co.,* 16 *Johns.,* 6 ; *Bank of Augusta vs. Earle,* 13 *Peters,* 519, 588 ; *Rungan vs. Lessee of Coster,* 14 *Pet.,* 122 ; *Miller vs. Ewer,* 27 *Maine,* 509 ; *Day vs. Newark India Rubber Company,* 1 *Blatchf. C. C.,* 628 ; *Wharton Confl. L.,* secs. 22, 48, *a.*

That a person can have but one domicile is well established. *Wharton C. L.,* sec. 22, *ad fin.,* secs. 72, 73, *and esp.* 74 ; 23 *Pick.,* 170, 177 ; 1 *Bradford,* 70 ; 5 *Vesey,* 750 ; *Westlake Priv. Int. L.,* sec. 129.

The cases in which it has been held that a corporation can have more than one, refer solely to jurisdiction of Courts. *Westlake Priv. Int. Law,* sec. 55 ; *Canon Co. vs. McLaren,* 5 *H. of L.,* 416 ; *R. R. vs. Letson,* 2 *How. S. C.,* 497 ; *Ohio & Miss. R. R. vs. Whalen,* 1 *Black,* 286.

If the second construction be adopted, the Company would be domiciled in Pennsylvania, the State in which the first consolidation Act was adopted. (See Acts cited above.) *Railroad vs. Harris,* 12 *Wallace,* 82, 83 ; *Hays vs. S. S. Co.,* 17 *How. S. C.,* 596 ; *Bishop vs. Brainerd, supra ; Limerick & Waterford R. R. Co. vs. Fraser,* 4 *Bing.,* 394 ; *Edin. & L. R. W. vs. Dawson,* 3 *Jur.,* 55 ; *Kilkenny Rw. vs. Fielding,* 2 *Eng. L. & E.,* 388 ; *Railroad vs. Letson,* 2 *How. S. C.,* 497 ; *Bank of Aug. vs. Earle,* 13 *Pet.,* 519 ; *R. R. vs. Co. of Morgan,* 14 *Ills.,* 165 ; *Wharton Confl. L.,* sec. 72.

The last construction would seem to be clearly negatived by the terms of the several consolidation Acts themselves, (See Acts cited,) which contemplated the raising of " one corporation," (Md. Act,) " one body corporate and politic," (Pa. Act,) and by the authoritative construction of this Court and of the Supreme Court.

Where the question is between two sovereignties, with regard to all *property,* as well personal as real, the *lex rei sitæ* is the only consistent rule, and is being now every-

where allowed.   *Von Savigny Priv. Int. Law, secs.* 23–4–5, *p.* 129, *et seq.; Wharton Confl. L., sec.* 1, *sec.* 297, *et seq., esp. secs.* 311, 11, 12, 13, 717; *Westlake Priv. Int. L., sec.* 260, *et seq.; Green vs. VanBuskirk,* 5 *Wall.,* 307; *Robinson vs. Bland,* 2 *Burr.,* 1079; *Cammell vs. Sewell,* 5 *H. & N.,* 728; *S. C.,* 8 *W. R.,* 639; *Castrique vs. Imrie, L. R.,* 4 *H. of L.,* 414; *Wharton, sec.* 344; 7 *Wall.,* 139; *O'Neal vs. Bridge Co.,* 18 *Md.,* 1; *Smith vs. McAtee,* 27 *Md.,* 438; *Fouke vs. Fleming & Douglass,* 13 *Md.,* 392; *Chauvenet vs. Co. Comm's Anne Arundel Co.,* 3 *Md.,* 264; *St. Louis vs. Ferry Co.,* 11 *Wall.,* 423; *Wharton Confl. L., secs.* 74, 354.

*A. Leo Knott, State's Attorney for Baltimore City,* and *Charles J. M. Gwinn, Attorney-General,* for the Appeal Tax Court.

There can be no question that the Baltimore City Court, in dealing with the real estate belonging to the Philadelphia, Wilmington and Baltimore Railroad Company in the city of Baltimore, was right, to the extent to which it decided that such real estate was liable to taxation. *Philadelphia & Wilmington Railroad vs. Maryland,* 10 *Howard,* 377; *Delaware Railroad Tax Case,* 18 *Wallace,* 212; *Philadelphia, Wilmington & Baltimore Railroad Company vs. Bayliss,* 2 *Gill,* 357–359; *State vs. Philadelphia, Wilmington & Baltimore Railroad Company,* 45 *Md.,* 362; *Central Railroad vs. Georgia,* 92 *U. S.,* 675; *Chesa., &c., R. R. Co. vs. Virginia,* 94 *U. S.,* 725.

It was wrong in deciding that those portions of the real estate, owned by the company as lessee for ninety-nine years, with the right to a renewal of such leases forever, were exempted from taxation, because such portions were held under leases from the Mayor and City Council of Baltimore.   It was the evident purpose of the Act of 1876, ch. 260, secs. 1 and 17, that all the estates, interests and claims, connected with, or growing out of, land, should be valued in the aggregate, and not separately; *Turner vs.*

OCTOBER TERM, 1878.          403

Phila., Wilm. and Balt. R. R. Co. *vs.* Appeal Tax Court of Balt. City.

*Smith,* 14 *Wallace,* 563 ; and that the property thus valued in the aggregate should be assessed to the person who had the permanent right of possession, and the permanent right to the profits of such property.

A lease for years is a contract for the possession and profits of land for a determinate period, with the recompense of rent. *U. S. vs. Gratiot,* 14 *Peters,* 538 ; 5 *Bacon's Abridg.,* 433 ; *Allen vs. Lambden,* 2 *Md.,* 282. The lessee, under a lease for years, containing the covenant of re-entry for non-payment of rent at the time stipulated, acquires a defeasible interest in the land leased, liable to be defeated by the entry of the lessor for non-payment of the rent at the time limited. *Mackubin vs. Whetcroft,* 4 *H. & McH.,* 153 ; *Gilbert on Rents,* 20 *L. L.,* 9. A tenant, under a lease for ninety-nine years, renewable forever, has a permanent right both to possession and profits. *Banks vs. Haskie,* 45 *Md.,* 217. The interest remaining in the lessor, under our laws, is accounted to be only a right to the prompt payment, in perpetuity, of the interest on a sum of money equivalent to the value of the property in fee at the time when the lease was made. 45 *Md.,* 217.

It is because of the permanent right of the lessee, under such a lease, to the possession and profits of the demised premises, that such lessee is chargeable, in this State, with the taxes upon the leased property, even if his lease contain no covenant to pay such taxes. *Hughes vs. Young,* 5 *G. & J.,* 67 ; *Cooley on Taxation,* 288 ; *Burroughs on Taxation,* 223 ; *Spangler vs. York County,* 13 *Penn. St.,* 322. Such a lease is equivalent to the sale of the property for a series of terms without end ; and a lessee acquiring such an interest can claim no benefit from the immunity from taxation, which the property enjoyed while in the possession of the lessor. *Morgan vs. Louisiana,* 93 *U. S.,* 223. It was an immunity intended for the benefit of the City of Baltimore alone. It protected the property in question only so long as the said city remained entitled to the possession of the property.

But the case does not rest upon the particular obligations affecting a tenant for ninety-nine years. In this State the Railroad Company holding the leasehold estate was liable to pay the taxes on the demised land. 1812, *ch.* 191, *sec.* 36; 1 *Code, Art.* 81, *sec.* 73; 1874, *ch.* 483, *sec.* 65. It was accounted, for the purposes of taxation, the owner of the land. It could, under all the provisions referred to, have had an action against the City of Baltimore for the taxes on such land, which it might pay, or might have deducted any taxes so paid out of the rent reserved, if it had not agreed with the city that it would pay all such taxes. Having so agreed, and being accounted, under our law, the taxable owner of the property valued to it as such owner, it must remain such taxable owner without a remedy over against its lessor for the taxes which it may be compelled to pay upon such valuation. It cannot claim to have any property so valued to it stricken from the tax list, upon the ground that such property belongs to the City of Baltimore, because the law has said that, for the purposes of taxation, the City of Baltimore is not the owner of the property; but that the Railroad Company is such owner. It does not matter what exemption the City of Baltimore may be able to claim from taxation upon the rents issuing out of the demised premises, of which rents only it is the owner. Such exemption cannot help the Railroad Company, which is the taxable owner of the properties out of which the rents issue, and which can claim no exemption of such properties from taxation. *Trustees of Elmira vs. Dunn,* 22 *Barb.,* 402.

The Court below was right in holding that the improvements on the demised land ought to have been valued to the Railroad Company. The Act of 1876, ch. 260, sec. 17, directed improvements upon any land to be valued separately from the land. The Railroad Company was the owner of the improvements which were valued to it. In England it is settled law that in a case where a lessor has

OCTOBER TERM, 1878. 405

Phila., Wilm. and Balt. R. R. Co. *vs.* Appeal Tax Court of Balt. City.

covenanted to pay any rate or tax, and the annual value of the premises is afterwards increased by alterations and new buildings, the lessor is liable to pay, not the whole tax upon the enhanced value of the premises, but only a tax upon the value of the property as it stood when he leased it. The lessee must pay the tax upon the improvements added. *Yoe vs. Leaman*, 2 *Strange*, 1190, 1191; *Hyde vs. Hill*, 3 *T. R.*, 379; *Watson vs. Home*, 14 *E. C. L.*, 47, 48; *Smith vs. Humble*, 80 *E. C. L.*, 327, 328. This rule, settled long since in England, in cases where the lessor covenanted to pay taxes on the demised premises, may claim overwhelming reasons for its support in a case where the lessee has covenanted to pay such taxes.

The Philadelphia, Wilmington and Baltimore Railroad Company, having been incorporated, under the laws of Pennsylvania, Delaware and Maryland, is a distinct corporate body in each of said States. *Ohio and Mississippi Railroad Company vs. Wheeler*, 1 *Black*, 297, 298; *Railroad Company vs. Harris*, 12 *Wallace*, 82, 83. The question in this case is not as to the locality which these three distinct corporations, governed by one body of directors, may select for the transaction of the general business of the three corporations, nor as to the localities in which the corporate meetings are held. The only question with which we have to do in this inquiry is, to determine whether the record discloses that the second ward in the City of Baltimore was not, in fact, the seat of the principal place of business in Maryland of the Maryland corporation, incorporated under the Act of 1837, ch. 30.

It was the duty of the assessors, under the Act of 1876, ch. 260, in valuing the movable property of the Railroad Company, to value it to such company at its principal place of business in this State. It was the duty of the board of control and review to correct any error upon this point into which the assessors may have fallen. The presumption of law, in the absence of proof to the contrary, is

that the valuation of the locomotives, passenger, freight and other cars, belonging to the Railroad Company, was made in the locality in which the company had its principal office or place of business in this State. *State vs. Reaney*, 13 *Md.*, 240; *Strother vs. Lucas*, 12 *Peters*, 437; 2 *Coke's Inst.*, 703; *Angell & Ames on Corporations*, (*8th Ed.*,) *sec.* 107.

If the rolling stock of a Railroad Company incorporated by this State, and conducting its business therein, must be treated as property, consisting of movable fixtures, as was held in *State vs. Northern Central Railway Company*, 18 *Md.*, 217, 218, then, until some provision is made by law for creating different *situs* for different portions of such rolling stock in use upon different parts of the line of the Railroad Company within this State, the valuation of such property must be made at the principal place of business of the Railroad Company in this State. Such property is confessedly not real estate in the meaning attached to those words in the General Assessment Act. It is not property which is, as matter of fact, permanently located in any city or county of this State. It is property used from day to day in carrying freight and passengers to and from the *situs* of the Railroad Company in the City of Baltimore. This property, consisting, under the ruling in 18 *Md.*, 217, 218, of movable fixtures belonging to the appellee, which have confessedly no *situs* of their own, as property permanently located in any city or county of this State, must, therefore, for purposes of taxation, under our existing laws, be located at the *situs* of their owner, the Railroad Company. This *situs* is in the City of Baltimore. They can be properly assessed in no other place. *Pacific R. R. vs. Cass Co.*, 53 *Mo.*, 31, 32. If such engines and cars are to be treated in this State as they are in England, as investments of capital for the purpose of stocking a railroad, they are, in fact, only a stock in trade, and ought to be valued in the locality where the Railroad Company

has its principal place of business.    *Hodges on Railways,* 629, 665.

The differences of opinion, to which attention is called in our argument of the case of the Western Maryland Railroad Company, *pp.* 283–284, *ante,* are not material to this case; because, under the existing laws of this State, the rolling stock of the Philadelphia, Wilmington and Baltimore Railroad Company, in so far as it is subject to taxation by this State, whether it be regarded as made up of movable fixtures, or as being personal estate, has its only determinate *situs* at the principal place of business of that railroad company in the City of Baltimore; and, according to the prevailing current of authorities, ought to have been valued to the Railroad Company at such *situs.* *Orange and Alexandria Railroad Company vs. City Council of Alexandria,* 17 *Grattan,* 185; *Railroad Company vs. County of Morgan,* 14 *Illinois,* 163; *Pacific Railroad Company vs. Cass County,* 53 *Mo.,* 31, 32; *Stevens vs. Buffalo and N. Y. Railroad Company,* 31 *Barb.,* 596; *Beardsley & Kirkland vs. Ontario Bank,* 31 *Barb.,* 619; *Randall vs. Elwell,* 52 *N. Y.,* 521; *R. R. Co. vs. Saco,* 60 *Maine,* 196; *State vs. Philadelphia, Wilmington and Baltimore R. R. Co.,* 45 *Md.,* 384, 385.

ALVEY, J., delivered the opinion of the Court.

These are cross-appeals; though in this opinion, for brevity sake, we shall designate the Philadelphia, Wilmington and Baltimore Railroad Company as appellant, and the Appeal Tax Court of Baltimore City as appellee.

The appellant is a corporation composed of several railroad companies, which had been previously chartered by the States of Maryland, Delaware and Pennsylvania; and which, by Acts of these States, were authorized to become consolidated and form one corporation, under the name and style that it now bears.    The road of this corporation thus formed, extends from Philadelphia to Baltimore.

One of the original companies now forming a part of the present appellant, was the Baltimore and Port Deposit Railroad Company, chartered by the Act of this State of 1831, ch. 288, to construct a road from Baltimore to Port Deposit, on the Susquehanna river; and another of the original companies of which the appellant is composed was the Delaware and Maryland Railroad Company, chartered by the Act of this State of 1831, ch. 296, to construct a road from the Susquehanna river to the Maryland and Delaware line. This latter company was afterwards, by the Act of 1835, ch. 93, and corresponding Act of the State of Delaware, united with the Wilmington and Susquehanna Railroad Company, a corporation chartered by the State of Delaware; the two companies united taking the corporate name of the Wilmington and Susquehanna Railroad Company. Afterwards, by an Act of this State of 1837, ch. 30, and corresponding Acts of the States of Delaware and Pennsylvania, the Wilmington and Susquehanna Railroad Company, and the Baltimore and Port Deposit Railroad Company, were authorized to consolidate with the Philadelphia, Wilmington and Baltimore Railroad Company, which had been previously chartered; and the consolidated company thus formed is the appellant in this case.

The charter of the Baltimore and Port Deposit Railroad Company contained no exemption from taxation whatever; and the charter of the Delaware and Maryland Railroad Company made the shares of stock therein personal estate, and declared that such shares "shall be exempt from the imposition of any tax or burthen by the State, except, that portion of the permanent and fixed works of the company, within the State of Maryland." And it has been held, that all the real and personal property in this State that belongs or appertains to that part of the road which was originally owned by the Baltimore and Port Deposit Railroad Company, and also the permanent and fixed works

of that portion of the road which formerly belonged to the Delaware and Maryland Railroad Company, within this State, are liable to be assessed in the hands of the present appellant, just as they would have been in the hands of the original companies. *Phil. & Wilmington R. Co. vs. The State of Md.*, 10 *How.*, 376; *Same vs. Bayless*, 2 *Gill*, 355; *State vs. Phil., Wilm. & Balto. R. Co.*, 45 *Md.*, 362.

That being settled, and altogether beyond further controversy, the question made on the present record is: To what extent may the property of this corporation be assessed for municipal taxation in the City of Baltimore, under the Assessment Acts of 1876, ch. 260, and 1876, ch. 159?

By the Act of 1876, ch. 159, it was provided that the property, real and personal, of each and every railroad company in this State, working their roads by steam, should be assessed and taxed for county and municipal purposes in the same manner as the property of individuals was then assessed and taxed; and the subsequent General Assessment Act of the same session, 1876, ch. 260, sec. 1, declared that "all property of every kind, nature and description, within this State, shall be liable to valuation, assessment and taxation." And in regard to these Acts, we have decided in the case of the *Appeal Tax Court vs. The Western Md. R. Co., p.* 296, *ante*, that the Act, ch. 260, did not repeal by implication the former Act, ch. 159, and that the later Act was not a substitute for the prior one, but that they both stood well together, until modified by the Act of 1878, ch. 413.

There are two main questions presented by the record: 1. Whether the City of Baltimore, by virtue of the Acts of 1876, before referred to, had the right to tax two lots or parcels of ground leased by it to the appellant for ninety-nine years, renewable forever, and which have been improved by the appellant, by the erection of depots, shops,

&c., thereon; and 2. Whether the city had the right to tax the rolling stock of the appellant, such as locomotives, passenger, freight and other cars belonging to the appellant, as property located in the City of Baltimore.

The Court below held, that the two parcels of ground leased from the City of Baltimore were not subject to valuation and assessment, and accordingly directed them to be stricken from the assessment; but as to the improvements thereon, it was held that they were subject to valuation and assessment. It was also held, that a part of the rolling stock of the appellant was subject to valuation and assessment in the same proportion to the whole rolling stock of the company that the length of the Baltimore and Port Deposit Railroad bore to the whole length of the appellant's road between Baltimore and Philadelphia.

It is from an order embodying these rulings that both parties have appealed to this Court.

1. The appellant does not contend, as we understand the counsel, that the parcels of ground leased from the city are entirely exempt from assessment and taxation; but it is contended, that inasmuch as the appellant is owner and holder of a leasehold estate only, subject to a full annual rental, payable to the city, the owner of the reversion in fee, and that the city is entirely exempt from all taxation in respect of the reversion and the rent reserved by the lease, the appellant should only be assessed with the value of the leasehold estate, subject to the rent reserved. And this would seem to be nothing more than what is just and equitable.

All the interest and estate of the city in the premises are clearly exempt from taxation by statute; and if the reversion, and the rent, the supposed annual value of the leasehold estate, are free from taxation, upon what principle should the lessee be assessed as for a fee simple estate, without deduction of rent? In answer to this question, it is said that the appellant has covenanted with the city to " pay

all taxes, assessments and public dues whatever, levied, charged or assessed, or that may hereafter be levied, charged or assessed, on the above described premises, or the yearly rent issuing therefrom." This is the covenant in the leases from the city, but it is very manifest that it is but the usual covenant inserted in leases for the benefit and exoneration of the lessor; and that it has reference only to such taxes and assessments as might affect the reversion and its incident the rent reserved under the lease. It does not seem reasonable that it could ever have been the design of the parties that this covenant should have operation notwithstanding the interest of the city in the property and all rent accruing therefrom should have entire exemption from assessment and taxation. The general principle certainly is, that, when the lease is silent upon the subject, the landlord is bound to pay all State and municipal taxes and assessments upon the property (*Taylor L. & T.*, sec. 341, and the cases there cited;) but in this State, ever since the general assessment Act of 1812, ch. 191, sec. 36, it has been made the duty of the tenant holding any leasehold estate, to "pay the collector the sum valued for the estate or interest of any landlord," or, as the words now stand in the statute, to pay the taxes levied on the demised premises; and the tenant so paying has been given his right of action to recover such money of the landlord, as money paid for his use, or the right to deduct the same from the rent reserved, unless otherwise agreed. *Code, Art.* 81, *sec.* 73; *Act* 1874, *ch.* 483, *sec.* 65. This provision was intended as a means of facilitating the collection of taxes; there being many cases where the landlord might not be known, or might be absent. But that provision of the law clearly has no application to a case like the present, where there is no liability of the landlord in respect to the taxes, either to the taxing power or to the tenant. If the lease had been silent upon the subject, and the appellant were required, as tenant in possession, to pay

412        MARYLAND REPORTS.

Phila., Wilm. and Balt. R. R. Co. *vs.* Appeal Tax Court of Balt. City.

taxes as upon a fee simple valuation, clearly there would be no right of deduction from the rent as against the city; for that would be in palpable violation of the exemption given by the statute.

The case of *Hughes vs. Young*, 5 *Gill & John.*, 67, relied on by the counsel for the appellee, is hardly an authority for the position for which it is cited. That was an action of covenant upon a lease for ninety-nine years, and renewable, dated in 1780, brought by the heir of the lessor against the assignee of the lessee, for rent due; and the question was, whether the defendant was entitled to an abatement of the rent for taxes paid. The lease contained no covenant in relation to the payment of taxes. The case was tried on an agreed statement of facts; and as there were no reasons assigned for the judgment rendered, denying the set-off, either in the Court below or in this Court, it is difficult to determine upon what particular ground the Court proceeded. In the argument of the eminent counsel who tried the case for the plaintiff, however, we may discover how they treated the case, and upon what grounds they sought to have the judgment affirmed. They set out by contending that inasmuch as the matter was presented on a case stated, the Court could make no inferences of fact; and that it did not appear whether the taxes claimed were imposed for State or city purposes; or whether they were levied under the Act of 1817, ch. 148, or the general assessment Act of 1812, ch. 191. In regard to taxes levied under the Act of 1817, they contended the landlord was not responsible, but in regard to those levied under the general assessment Act of 1812, they expressly admitted that he would be responsible; and inasmuch as the statement of facts did not show under which of the laws the taxes were levied, they contended the judgment should be affirmed. It was also contended on behalf of the plaintiff in that case, that as the lease was dated in 1780, the covenant for the payment of a specific sum as

rent should be construed with reference to the law in existence at the date of the lease, and that the provision of the Act of 1812 should not apply to it; and the counsel cited authorities in support of this position. There were several other propositions advanced in argument; but the case was argued upon the distinct concession, that, under a lease made since the Act of 1812, the landlord would be responsible for taxes imposed under that Act, which was an Act providing for a general assessment of the property in the State. And as we have already seen, this particular provision of the Act of 1812 has been in force from the time of its enactment to the present; and the leases in this case were made in 1851 and 1852.

We are of opinion, therefore, that the two parcels of ground leased from the city and embraced in the assessment, should be valued as leasehold estate, and not as fee simple estate, and that the valuation should be made subject to the rent reserved in the lease.

As to the improvements placed upon the two parcels of ground leased from the city by the appellant, we fully concur with the Court below, that they were subject to separate assessment; and as they were placed upon the demised premises by the appellant for its own use and benefit, they were properly assessed to the appellant at their full assessable value. The Act of 1876, ch. 260, sec. 17, expressly required that the assessors should value separately the improvements upon each lot or parcel of ground in the City of Baltimore. And that the appellant is liable for taxes upon the full assessable value of such improvements we entertain no doubt. If this were a case between landlord and tenant, where the question was made as to the amount of taxes for which the tenant should be allowed as against the rent claimed, the lease being silent or requiring the landlord to pay the taxes, without special reference to improvements, the tenant could claim only in respect to the property as he leased it,

and not for all the taxes paid upon its enhanced value, by reason of large improvements placed thereon by himself, and for his own exclusive use and benefit. The authorities are explicit to this point. *Yeo vs. Leaman*, 2 *Str.*, 1190; *Hyde vs. Hill*, 3 *Dunf. & East*, 379; *Watson vs. Home*, 7 *B. & Cr.*, 285; *Smith vs. Humble*, 15 *C. B.*, 321. And the reason of the principle applies quite as strong in this case as in the case between landlord and tenant.

2. The next question for consideration is, whether the rolling stock of the appellant was properly assessed in the City of Baltimore.

It is alleged by the appellant, that the whole of its rolling stock included in the assessment is employed in operating and running over the whole line of railroad between Philadelphia and Baltimore, and on the line of the Delaware Railroad, and is continually passing over the three States of Pennsylvania, Delaware and Maryland. That none of it is *permanently* located in the City of Baltimore: That the principal office and place of business of the company is, and has always been, located in Philadelphia: and that the meetings of the directors of the company are held alternately at Philadephia and at Wilmington; That its work-shops, and car and engine depots are at Wilmington, and that it is seldom that any of its engines or cars stay over even a single night in Baltimore. These are the allegations on the part of the company, and while in response thereto the appellee asserts generally that the property assessed was subject to the assessment as made, we do not understand that the facts alleged are controverted on the part of the appellee; indeed, at the argument they were conceded to be truly alleged.

By the general assessment Act of 1876, ch. 260, sec. 17, it is provided that "All property *permanently located* in any county of this State, or in the City of Baltimore, shall be valued and assessed to the owner thereof, in the assessment district in which said property is so *perma-*

*nently* located." And again, in another clause in the same section of the Act, it is declared that "all personal property, belonging, &c., shall be valued and assessed to the owner thereof, in the assessment district in which the owner may reside, except goods and chattels *permanently located* in any city or county of this State, which shall be valued and assessed in said city or county, in which they are so located." It was under these provisions of the Act that the assessment was made, and it is upon the construction of such provisions that the validity of the assessment must depend.

It is contended on the part of the appellee, that the depot and station of the appellant in the City of Baltimore must be regarded as its principal office of business in this State, and that being so, the domicile of the corporation must be taken as located there, so far as this State is concerned; and in the absence of legislation fixing a different *situs* for the rolling stock of the appellant, the portion of it assessed must be regarded as located in Baltimore. We are not able, however, to perceive that this position is tenable. The assessment act must have a reasonable and not a strained construction; and no fiction will justify us in saying that any portion of the rolling stock of the appellant now in question, according to the uncontroverted facts of this case, is *permanently located* in Baltimore. Whether the home office of the corporation be at Philadelphia or at Wilmington is a question that we need not decide; but it is quite certain that it is not in Baltimore; and the fact that Baltimore is one of the termini of the appellant's road can make no difference in this respect. It is plain the rolling stock of the company cannot have permanent location or legal *situs* at two or more places at the same time, unless so declared by positive statute; and conceding that it should be located at the domicile, or home or principal office of the corporation, it is clear, as the law now stands, there can be no well

founded claim to assess this property in Baltimore. The engines and cars of the appellant have no abiding place or permanent location in this State, so as to become incorporated with the other permanent property of the State, and are only brought here transiently while employed in the operations of the road. And whether such engines and cars be regarded as personal property, or as so far partaking of the nature of realty as to justify the denomination of them as movable fixtures, the principle equally applies. They have the movable quality, and in the absence of positive legislation fixing a different *situs* they can have no other given them by construction than the home or principal office of the corporation. The Supreme Court of the United States, in the cases of *Hays vs. The Pacific Mail Steamship Co.* 17 *How.*, 596, and *St. Louis vs. The Ferry Co.*, 11 *Wall.*, 425, and particularly in the latter case, have decided against the right of taxation, upon facts, strongly analogous to those upon which we decide that the rolling stock in this case cannot properly be assessed to the appellant in Baltimore. We need not do more than refer to those cases, as the recital of the facts would unduly extend this opinion, already sufficiently long.

The question of the repeal *pro tanto* of the Acts of 1876, ch. 159, and 1876, ch. 260, by the Act of 1878, ch. 413, and the effect of that repeal upon the prior proceedings under the assessment Act, has been considered and decided in other cases where it arose and was argued, and we therefore forbear saying any thing more in regard to it. We refer to the opinions in those cases for the reasons upon which our conclusion was based.

It follows that the order appealed from must be reversed, and the record remanded that the assessment be made to conform to the principles decided in this opinion.

*Order reversed, and*
*record remanded.*

(Decided 7th February, 1879.)