TEXAS & PACIFIC R'Y Co. v. HARRISON COUNTY ET AL.

(Case No. 987.)

1. ASSESSMENT FOR TAXES.— The acts of *de facto* deputy assessors, in raising the valuation of property listed for taxes, are not rendered invalid because they may have been legally disqualified from acting as deputies by reason of their holding other offices.

2. BOARD OF EQUALIZATION — TAXATION.— When a question of valuation for taxation has been once regularly referred to the proper board of equalization, the valuation of that tribunal is final.

3. BOARD OF EQUALIZATION.— A deputy assessor, who was also a county commissioner, sat as a member of a board of equalization to revise the assessment of property for taxes, to which board the question of valuation was referred on the protest of a tax-payer. *Held* —

   1. The action of the board of equalization was not void; the tax-payer not objecting at the time to the deputy assessor constituting a portion of the board, and it not being shown that there was not a quorum of the board without the deputy assessor.

4. INJUNCTION — TAXATION.— A charge in a petition for injunction to restrain the collection of taxes, that the board of equalization

added to the assessment property not owned by the tax-payer, will be disregarded when it is at the same time shown that the amount of taxes first assessed against the tax-payer for the same species of property is not thereby increased by the board of equalization.

5. CONSTITUTIONAL LAW — TAXATION.— The limitation imposed by the constitution of 1876, on the power of counties to levy taxes, applies only to the erection of public buildings. For the purpose of paying the interest and providing a sinking fund to satisfy any indebtedness existing at the adoption of the constitution of 1876, counties are authorized to levy, assess and collect taxes to the necessary amount. Const., art. XI, sec. 6; art. XIII, sec. 9.

6. TAXATION — SCHOOL DISTRICTS.— Though the tax authorized by act of the 15th legislature (ch. 80, pp. 89, 90) to pay indebtedness to teachers, was one on school districts separately, and not on counties, yet where a tax of one-sixth of one per cent. was levied on the entire county, and that was the amount due from each school district after comparing the indebtedness of the district with the amount of its taxable property, the tax, though irregular, was sustained.

APPEAL from Harrison. Tried below before the Hon. A. J. Booty.

The opinion sufficiently states the case.

*Turner, Lipscomb & Stewart*, for appellant.

I. The company having listed its property with appropriate valuation, and returned the same to the assessor, and he having failed to make exceptions to the listing or valuation, it became the true and legal assessment, and the board of equalization had no jurisdiction to alter, change or amend it. General Laws 1876, p. 217, sec. 5; p. 270, secs. 17, 18, 19.

II. There was not in 1878 any legally constituted board of equalization. The legislature failed to give effect to the provisions of the constitution or define the powers or jurisdiction of such board. Authorities cited above; Const., art. VIII, sec. 18.

III. Whissen and Floyd were not deputies, and by law could not be deputy assessors. Their action was void and without authority, and could not support the jurisdiction

of the pretended board of equalization. One was a constable and the other a county commissioner at the time.

IV. The legislature had no constitutional right to provide that the action of the pretended board of equalization was final, thus precluding the rights of the courts to protect the property of its citizens from unjust and extortionate exactions.

The above is submitted as a proposition of natural justice, without authority.

V. The law makes the action of the pretended board of equalization final only as far as it relates to the valuation of property returned, and not in other particulars. It was not intended by the legislature that a court of equity could not relieve in a case where a citizen has property assessed to him that he does not own, that he does not claim, and that does not exist.

VI. The action of the pretended board of equalization is final only, under the statute, in regard to fixing the value of property subject to taxation. The board having assessed and valued property that does not exist, and which the company does not possess, own or claim, a court of equity can and should grant relief.

VII. Under the constitution of 1876, there is no power in the counties to levy a tax to pay teachers.

VIII. The counties in their municipal capacities never incurred any debts to teachers, and never did possess power of taxation for school purposes. Act of 1873.

IX. The county court had no power under the constitution nor under the act of August 7, 1876, or under any other law, to levy a tax of one-sixth per cent. *ad valorem* on all the property of Harrison county, to pay teachers.

X. If a citizen pays taxes illegally assessed against him, whether by compulsory process or otherwise, he may recover the money. Ambury *v.* Ambury, 19 Mass., 461; Perry *v.* Done, 12 Pick., 206; Atwater *v.* Woodbridge, 6

Conn., 223; Adam *v.* Litchfield, 10 Conn., 127; Smith *v.* Redfield, 27 Me., 145; Tauney *v.* Millbury, 21 Pick., 64; Cooley on Taxation, pp. 536–7, and notes with authorities cited.

*Thos. P. Young*, for appellee.

GOULD, ASSOCIATE JUSTICE.— The T. & P. R'y Co. brought this suit, to enjoin the collection of a tax of one-sixth of one per cent., levied in 1878 by the commissioners' court of Harrison county, under the act of August 7, 1876, to "ascertain the amount due teachers," . . . to "provide for the payment of the same," and to recover back other taxes for that year alleged to have been illegally exacted, and paid under protest. The tax of one-sixth of one per cent. and other county taxes levied were objected to as illegal, and the assessment was also objected to on various grounds.

Amongst other matters, the petition stated that the railway company had listed its property subject to taxation in Harris county, including about fifty-three miles of railroad, besides other property, at $532,648, and that the valuation had been raised by parties claiming to be deputies of the assessor, but holding other offices, and not legally competent to act as such deputies, to $700,618; and that the board of equalization, to whom, on the protest of the company, the matter was referred, had also adopted the raised valuation, and had added to the assessment of the company five and one twenty-fifth miles of road which said company did not own or possess, calling the same side track, and valuing it at $40,920. The petition alleged this raised assessment to be excessive and without authority; complained also that the county had exceeded the maximum of taxation allowed by the constitution in its levy, and for other reasons complained of the one-sixth of one per cent.

tax. There was a motion to dismiss the injunction, a general exception to the petition, and a sworn answer. The court sustained the motion and exception, and dismissed the petition, and the railway company appealed.

Our conclusions are:

1st.. That the assessment was raised by *de facto* deputy assessors, and their acts, in raising the valuation of the property listed, were not invalid because they may have been legally disqualified for the position by holding other offices or otherwise.

2d. The question of valuation appears to have been regularly referred to the board of equalization, and when so referred, the valuation of that tribunal was final. Int. & G. N. R. R. Co. *v.* Smith County, Tyler Term, 1880. The company appears to have listed its interest in the land over which it had the right of way, and on which its road-bed was constructed, as so many miles of road. The valuation appears to have been raised by the acting deputy assessors and by the board of equalization in the same way. As that valuation was final, it is not important to inquire as to the mode by which it was arrived at.

3d. It is objected that Floyd, who was acting as deputy assessor, was also county commissioner, and that he could not sit on the board of equalization to revise his own action. It does not appear that appellant objected at the time to Floyd as a member of the board, or that there was not a quorum of the board without Floyd. We are of opinion that it was not made to appear that the action of the board was null, or that the valuation was raised to $700,618 without authority.

4th. The charge that the board added to the assessment five and one twenty-fifth miles of road not owned by the company must be taken in connection with the other averments of the petition. From these it appears that the total assessment as raised by the acting deputies was $700,618, and that this remained the same after the action of the board, and was the amount on which the taxes were

estimated. The alleged additional five and one twenty-fifth miles charged to have been valued at $40,920, does not appear to have increased the amount above what it was before. Taking these averments all into consideration, we think that notwithstanding the general charge just stated, the petition fails to show that the assessment embraced property not owned or possessed by the railway company.

5th. Appellant claims that the constitution limits county taxation for the erection of public buildings, and for the payment of debts incurred prior to 1876, to one-half of one per cent. In our opinion, this limitation applies only to the erection of public buildings. For the purpose of paying the interest and providing a sinking fund to satisfy any indebtedness existing at the adoption of the constitution, counties are authorized to levy, assess and collect taxes to the necessary amount. Const., art. XI, sec. 6; art. XIII, sec. 9.

6th. It is objected that the indebtedness to teachers was by the school districts, not by the county, and that the tax authorized by the act to be levied was on the school districts separately, not on the county, and that the tax actually levied was on the county. Acts 15th Leg., ch. 80, pp. 89, 90. It appears, however, from the sworn answer, that the one-sixth of one per cent. levied on the county to pay indebtedness to teachers was in fact estimated as the amount necessary in each school district for that purpose, after comparing the indebtedness of each school district with the amount of its taxable property. We do not think the manner in which this tax was levied was that intended by the law; but under the averments of the sworn answer, we do not think that this irregularity entitled plaintiff to enjoin the collection of the tax. The right amount appears to have been levied for each district, and the failure to designate it by districts is no such injury to plaintiff as will support an injunction.

7th. Our general conclusion is that the petition did not

show that the company had paid taxes illegally levied or assessed, and that from the petition and answer it does appear that the court erred in disregarding the injunction and dismissing the petition.   The judgment is affirmed.

Affirmed.

[Opinion delivered December 17, 1880.]