Frazier, J.
This is an action brought by the executors of Robert Sherard Jr. to enjoin the collection of taxes placed upon the duplicate against his estate by the county auditor, claiming to act under the power confered by sections 2781 and 2782 Revised Statutes.
Sherard was the owner of certain shares of the capital stock of The Pittsburgh, Cincinnati & St. Louis Railway Co. These shares or stocks were part of them owned by him before, and part purchased after April, 1890. After April, 1890, negotiations were entered into for the consolidation of such railway with others, to be known as The Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company, and resulted in such consolidation.
*317 Sherard refused to convert his stock into the stock,of the consolidated company, and he and the directors of the company being unable to agree as to the value of such stock, the parties submitted the question to arbitration, which fixed the value at $60 per share of $50 each, and subsequently such proceedings were had on appeal that an issue was made as to the value of the stocks and tried to a jury in the court of common pleas, which found the value of the stock to be $65 per share. A motion by the railway company to set aside the verdict was overruled,and judgment given in favor of Sherard; a bill of exceptions taken embodying all the evidence, proceedings and rulings; a petition in error filed in the circuit court, which, in November, 1891, affirmed the judgment of the common pleas (one judge dissenting). The case was taken on error to the Supreme Court, where, January 16, 1894, the judgment of the circuit court was affirmed (two of the judges of the court dissenting). See Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v. Robert Sherard, Jr., 31 Weekly Law Bulletin, 56.
The provisions of the statute so far as necessary to examine, under which this assessment or taxation is made, are:
“If any person whose duty it is to list property or make a return thereof for taxation, either to the assessor or county auditor, shall, in any year or years make a false return or statement, the county auditor shall, for each year, ascertain, as near as practicable, the true amount of personal property, moneys, credits, and investments that such person ought to have returned or listed for not exceeding the five years next prior to the year in which the inquiries and corrections provided for in this and the next section are made; and to the amount so ascertained for each year, he shall add fifty per centum; multiply the sum or sums thus increased by said penalty, by the rate of taxation belonging to said year or years, and accordingly enter the same on the tax lists in his office, giving a certificate therefor to the county treasurer, who shall collect the same as other taxes.”
*318 In 1891, 1892 and 1893 Sherard in bis returns to the assessor did not affix any value to these stocks, but went before the City Board of Equalization, and represented to them that he held the stocks, and asked that they affix an amount or value to them. The pertinent inquiry in this case is, whether there has been upon the part of Sherard any fraudulent act, either of commission or omission, such as would make him liable under the sections of 2781 and 2782. Has he in either of these years made a false return, or failed to make a return, within the meaning of the law?
Certain machinery is provided by statute for the taxation of property. One of these provisions is, that every person of full age and sound mind shall list the property of which he is the owner. The Revised Statutes, 2804 and 2805,provide for annual county and city boards of equalization. Sherard was a resident of the city of Steubenville in which there was an annual city board of equalization in each of said years with power to hear complaints.
Each member of said Board is authorized to administer oaths, and said board is empowered to call persons before them, and examine them,under oath, in regard to their own or others’ property, moneys, credits and investments, and the value thereof, and to equalize the value of real and personal property, moneys, credits and investments within such city, and to order any property, credit or investment to be placed on the duplicate for taxation, and fix the value thereof, according to law, which has not been listed for taxation, and to increase the value of such property, moneys, credits or investments as have been in their judgment listed at less than their true value in money.
Sherard did not state the value of the stocks,or the judgment founded on them, in his annual return to the assessor, but stated therein the fact that he owned them, and on account of the litigation, he asked that the annual board of equalization affix the value,and he did go before that board, *319 and it did act in the premises and affixed the value in each year at twenty-five dollars for each share of fifty dollars par value. What is the effect of such action? Was the conduct of Sherard fraudulent, or is the action of the board legal and final, is an important and controlling question in the case now before the court, and a new one in this state, although we have some decisions which bear upon the question.
In the case of Wagoner v. Loomis, 37 Ohio St., 571, the second proposition of the syllabus is:
“As a general rule, the decisions of officers and tribunals specially created and charged, in tax laws, with the duty , of valuing property for taxation and equalizing such valuations, are final and conclusive. ”
And on page 582, McIlvaine, J., in delivering th.e opinion of the Court, says:
“Our statutes have made ample provision for the correction of mistakes and errors of judgment,committed by those intrusted,in the first instance, with the fixing of values upon taxable property. Even unjust and corrupt discrimination can be relieved against, in the special tribunals provided by the statute, for the equalization of values. As a general rule, the decisions of these boards must be held to be final and conclusive. To these boards, and not to the courts, must complaints as to inequalities in valuations be preferred. True, the attention of the auditor was called to the fact, that the valuation of these bank shares was higher in proportion to their value than the valuation of other property in the county; but there is nothing in the record to lead us to the belief that the annual city and county board of equalization would not, if complaint had been made, have advanced the valuation of all other property in the county, to its true value in money, The opportunity provided by law for the correction of the inequality complained of, was omitted. We cannot correct it now. And if for such reasons relief can be given to the plaintiff, we can 3ee no reason why the like relief should not be given to every taxpayer of the state, whose property has been assessed od *320 more than forty per cent, of its value, evento the destruction of the revenues of the state.”
Upon this same point as to the conclusiveness of the action of boards of equalization, is the case of Stanley v. Supervisors of Albany, 121 U. S. 535. The second proposition of the syllabus is:
“When the statutes of a state provide a board for the correction of errors and irregularities of assessors in the assessment of property for the purposes of taxation, the official action of that body is judicial in character, and its judgments are not open to attack, collaterally,”
And on page 550, Justice Field, in delivering the opinion of the Court, says:
“To these boards of revision, by whatever name they may be called, the citizen must apply for relief against excessive and irregular taxation, where the assessing officers had jurisdiction to assess the property. Their action is judicial in its character. They pass judgment on the value of the property upon personal examination and evidence respecting it. Their action being judicial, their judgments in cases within their jurisdiction are not open to collateral attack. If not corrected by some of the modes pointed out by statute, they are conclusive, whatever error may have been committed in the assessment. As said in one of the cases cited, the money collected on such assessment cannot be recovered back in an action at law, any more than money collected on an erroneous judgment of a court of competent jurisdiction, before it is reversed.
To the same effect, is 25 American and English Encyclopaedia of Law, on page 261:
“The acts of boards of equalization and review, in passing upon assessments, are judicial in their nature, and their determination is conclusive and cannot be attacked collaterally, unless their action or determination is impeached on the ground of fraud, or because of a want of jurisdiction.”
And in a note on the same page:
“Where a question of valuation has once been regularly *321 referred to the proper board of equalization, the valuation of that tribunal is final. Texas etc. R. R. Co. v. Harrison county, 54 Tex. 119.”
' “The courts cannot substitute their judgment for that of the board,” State Railroad Tax Cases, 92 U. S., 575.” “And money collected on an assessment which has been passed upon by a board of review, cannot be recovered back in an action at law any more than money collected on an erroneous judgment of a court of competent jurisdiction before' it is reversed, Stanley v. Albany County, 121 U. S., 535.”
But it is claimed|that the case of Gager, Treas. v. A. W. Prout et al., 48 Ohio St., 89, is in opposition to this doctrine.
The fifth proposition of the syllabus is:
“Proceedings had before a board of equalization cannot be pleaded as an adjudication in bar of proceedings before a county auditor for the correction of returns under the provisions of sections 2781 and 2782, Revised Statutes.”
It is a familiar and well recognized rule that the syllabus of the case, which in this state is agreed to by the members of the court concurring in the opinion, and is the law of the case, must be read in the light of the circumstances and facts of each particular case.
Let us then, examine what was the case in which this syllabus is announced as the law applicable to that case.
The third defense in the answer is:
“That at the time when the returns of personal property were made for taxation for the said years above named, Mary Barney was in full life,and returned her property,and all of it, for taxation, and that during each of said years an annual board for the equalization of real and personal property, in the city of Sandusky, which is a city of the second c’ass, equalized the value of the real and personal property, moneys and credits within said city, and added to and deducted from the valuation of all personal property, moneys and credits returned by the assessors therein, and which *322 were omitted by said assessors, and heard evidence for the purpose of adding other items omitted from said returns, and that in each of said years the said Mary Barney was notified to appear before said board, as was required by law; and she did appear, in person, or by her duly authorized agent.
“And testimony was heard bearing upon her returns of personal property, and her returns of personal property were duly passed upon by said board, and the amount and value of her personal property was equalized by'said board,and all questions arising upon or under the same were heard by said board, and by them fully settled and adjudicated.
“Wherefore defendants say that by reason of such adjudication the auditor of Erie county had no jurisdiction to add, either with or without evidence, any sum whatever to her returns, or to the tax duplicate against her on her estate, and that the attempt by him to do so is an attempt to pass upon and determine precisely the same questions that were passed upon and determined by the city board of equalization of the city of Sandusky, acting within their authority and power.
On page 93 is the reply to this defense:
“For reply to the third defense, plaintiff admits that for the years above named, the said Mary Barney was in full life, and also admits that for said several years a board of equalization of real and personal property was in session in the city of Sandusky, which is a city of the second class-Plaintiff denies each and every other allegation in said third defense.’’
On page 111, Minshall, Judge, in delivering the opinion of the Court, says:
“It is also claimed that the claim that Mary Barney had omitted taxable property had been heard and passed upon by the board of equalization of the city of Sandusky, and was therefore adjudicated. The records cf this board show that some small additions were made to her returns for the years 1884, 1885 and 1887, but they do not show that any of the matters now in dispute were adjudicated and de *323 termined by it. But the powers possessed by that board are very different from the jurisdiction conferred on the auditor by section 2781. The board is a part of the machinery provided for the assessment and taxation of property; and false returns or statements made to it may be corrected by the auditor under sections 2781 and 2782, as well as those made to the several assessors, so that what may be done before a board of equalization cannot be plead as a bar to the auditor under section 2781, to correct a false return made by a property owner. ”
We see what the character of the case of Gager,Tres’r. v. Prout,was upon which this law was announced.
Hence it becomes an important inquiry what is a false return within the meaning of section 2781, upon which the auditor may act, notwithstanding there is an annual board of equalization, having authority to, and which did act upon the question.
It is a familiar rule that proceedings any may be vitiated for fraud, and that where a party is guilty of fraud, he or those who claim under him, may not reap its benefits.
Upon the question as to what is a false return, we have been referred to the case of Ratterman, Treas. v. Ingalls, 48 Ohio St., 468. The first proposition of the syllabus is:
“In order to render a return made by a taxpayer to the assessor of property for taxation, ‘a false return,’ within the meaning of original and amended section 2781,. Revised Statutes, there must appear, if not a design to mislead or deceive on the part of the taxpayer, at least culpable negligence.”
And on page 486, Spear, Judge, says:
“In Insurance Co. v. Capellar, 38 Ohio St., 560, the company disclosed the real facts to the auditor- by returns on the blanks furnished, but deducted its re-insurance fund as a debit from its credits, and returned the balance for taxation. The auditor proposed to correct these returns under section 2781, for five years, and the suit was to enjoin this proposed action.
*324 “As made by the company, the statements were unquestionably erroneous. The claim was made in argument by the learned Attorney General, that the returns were false, and he argued, as is urged here,that the word ‘false’ meant ‘not true;’ that the returns did not comply with the statutes, and hence were ‘false.’ This was denied by counsel for the company, (now one of the eminent counsel for defendant in error in this case,) who contended as is here contended, that the returns were not ‘false,’ inasmuch as there was no concealment or intentionally false statements, and that the returns showed every item, and the auditor had full knowledge of their character. The information as to ownership was given the auditor on the returns; in the present case like information was given by the taxpayer verbally. The court held that the returns were not false within the meaning of the statute, and confined the judgment to the amount due as taxes for the current year, without penalty. ”
Following out the same line of decisions, is the case of Probasco v. Raine, Auditor, 50 Ohio St., 378. The third proposition of the syllabus is:
“As to what constitutes a ‘false return’ under section 2781, Revised Statutes, Ratterman v. Ingalls, 48 Ohio St., 468, is followed and approved.”
Burket, Judge, in delivering the opinion of the Court, says, page 394:
“From the agreed statement of facts, it appears that these stocks were registered, and therefore could not be concealed; that such stocks had never been taxed by state authority, and that there was good reason for the belief that the stocks were not taxable; and therefore the court is unanimous in the opinion that the returns for taxation for the years 1881 to 1886, both inclusive, were not false returns, within (he meaning of Jhat term, as defined by this court in Ratterman v. Ingalls, 48 Ohio St., 468.”
And in the 38 Ohio SC,560, Insurance Co. v. Capj.el!ar, the syllabus is:
“A fire insurance company made return of its property *325 for taxation to the auditor of the proper county upon a printed blank form furnished to it by the auditor for that purpose, as required by law, in which all its property subject to taxation and the value thereof was truly stated. Among other items so returned were ‘all legal claims and demands for money or other valuable thing, or for labor or service due or to become due to it, and the value thereof.’ There was also stated in said return, in conformity to the requirements of the.form so furnished, a list of debts owing by said company, including an item for ‘re-insurance,’ the amount of which item was fifty per centum of all premiums received on policies not then expired. The amount of debt so returned was deducted from the amount of ‘claims and demands;’ and the remainder was placed upon the tax list and duplicate by the auditor who understood the character of the claim, and the amount of credits due the company subject to taxation. Held:
“1. The item returned as ‘re-insurance’ was not ‘a legal, bona tide debt,' within the meaning of section 2730, Revised Statutes.
“2, The amount of said item was erroneously deducted by the auditor from the amount of ‘claims and demands’ due the company, when the credits of the company were placed on the tax list and duplicate of the county for taxation.
“3. The return of the company was not false, within the meaning of sections 2781 and 2782,of the Revised Statutes.
“4. The county auditor, under section 1038 oí the Revised Statutes, may correct an error in the amount of taxes upon the current duplicate, resulting from such erroneous deduction.”
And on page 573, McIlvaine, Judge, says:
‘‘The point is, were these returns or statements false? They were made upon printed blanks furnished by the auditor, and in conformity thereto. The law required the auditor to furnish blanks for that purpose. The value of all property of the company subject to taxation was truly returned. The amount of re-insurance was also returned among the debts of the company, in conformity to the requirement of the blank form. No doubt the auditor at the time the blank was furnished, believed that this item, with *326 full knowledge of its character, was a debt which could properly be deducted from the credits of the company, and the company, when it returned the item, was of the same opinion. But, however that may be, we are of opinion that the returns, as made, under the circumstances shown, were not false, within the meaning of these sections. This point is further elucidated by the decision upon the next question made in this case, as we do not think that the remedy provided by sections 2781 and 2782 was intended to apply in cases where section 1038 is applicable.”
By what rule should the stocks or judgment have been valued for taxation ? In Exchange Bank v. Hine, 3 Ohio St.,1, one paragrah of the syllabus is:
“Choses in action are to be listed at their true value. If a note, for instance, is wholly worthless, it is not to be listed at all; if it is of some value, but less than its face, it is to be listed at what is it worth. ”
At page 25, Bartley, C. J., says:
“In estimating the taxable valuation of credits, they are not to be taken at their nominal amount, but like the valuation of other property, every circumstance affecting, in any manner, their value, should, be taken into consideration. If the debtor be wholly insolvent, the credit is of no value, and, therefore, has no basis for taxation. If the debtor be in doubtful or failing circumstances, if the claim be disputed, contested, or involved in litigation,or if any defense by way of payment, cr otherwise, either in whole or in part, against the claim, be known to exist, it should be considered, and proper allowances made, in estimating its taxable valuation. The actual value in money of credits thus ascertained, constitutes as proper a basis for taxation, as that of any other kind of property.”
In Cameron v. Cappeller, 41 Ohio St., 533 the syllabus is:
“A statement for the taxation of personal property, moneys, credits, investments in bonds, stocks, joint stock companies or otherwise, which omits a judgment, in reference to which proceedings in error are pending in the *327 Supreme Court, may be corrected by the county auditor under the power conferred by sections 2781 and 2782 Revised Statutes. In putting such judgment on the tax duplicate, the auditor should place it there at its true value at the time the owner should have listed it, and not at its nominal value.”
Nash, J. in the opinion, says:
. ‘‘Such judgment should be listed at its true value at the time of listing.
‘‘The district court, in the case now before us, proceeded to render the judgment which the court of common pleas, in its opinion, should have given, and in doing this valued the interest of Cameron in the judgment at its nominal value in 1876, 1877 and 1878, only deducting therefrom the amount of his attorney’s fee In these years there was a proceeding in error pending and undecided in the Supreme Court to reverse the judgment. By it important novel and difficult questions of law were raised, and it was uncertain whether the judgment would be affirmed. This situation certainly lessened the value of the judgment during its pendency. In fact, the petition averred that these things wholly destroyed the value of Cameron’s interest in the judgment, and when the district court acted, the averments of the petition had not been denied.
‘‘Therefore we think that there was error in the judgment of that court, for which a judgment of reversal is entered herein.”
But, let us look at the value of this judgment, or the value of these stocks as they are shown by the evidence.
It appears from the record in this case that the original proceeding was commenced under section 3388, Revised Statutes, as amended, 87 Ohio Laws, 159, which provides:
‘‘A stockholder who refuses to convert his stock into the stock of the consolidated company, shall be paid at least the actual value of such stock, to be ascertained not alone by its market value'previous to the making of sueh agreement for *328 consolidation by the directors, but from a consideration of the earning capacity of the road in which stock is held, without reference to such proposed consolidation, condition of said road, betterments, cars and other property, iis existing connections, and any other facts tending to increase or diminish the value of the stock, such payment to be made before the consolidation takes effect.”
The section further provides in case of disagreement as to value, for arbitration and an appeal to the common pleas court.
Persons who were members of the annual city board of equalization in the years 1891, 1892 and 1893, called as witnesses, testify that Sherard was before the board during ■ their session in each of said years, and asked them to fix the value of the stock, or judgment, for the reason that he was unable to do so on account of the uncertainty of the result of the litigation then pending. Some of the witnesses • testify that he then stated, in his opinion the stocks should have been valued higher than they were placed by tbe arbitrators or the jury.
It is also testified that Sherard furnished the board with New York newspapers containing printed reports of the stock market in which was quoted the price of stock in the new or consolidated company on the stock boards — the defendant claims, for the purpose of inducing the annual city board to affix to said stock or judgment thereon a less value than they would otherwise have done.
The proceedings of boards of equalization are not conducted upon the strict rules of evidence that are applicable in courts, and will not be set aside on account of the fact that they took evidence that would not have been taken in courts of justice, much less will such proceedings be held invalid for such reason when attacked collaterally.
The record in case of The Pittsburgh, Cincinnati & St. Louis Ry Co. v. Robert Sherard, Jr., is given in evidence, and one of the grounds of error urged was that the proceeding was prosecuted too late, the statute providing “such *329 payment to be'made before the consolidation takes effect.” If that assignment of error had been sustained, Sherard" would, instead of the amount awarded by the judgment,' been entitled to receive stock in the consolidated company, and in that view of the case the value of such stock was material.
In Probasco v. Raine,supra, the court-lay stress upon the fact that: ‘‘From the'agreed statement of facts-it appears that the stocks were registered, and therefore could not be concealed.” In the case at bar, in each of the years the annual city board affixed the value, there was a public record open to che inspection of the board- (or of any citizen), at the courthouse in' the city in which it held its sessions,and as each member was by law authorized to administer oaths, they could have examined Sherard under oath, and góf bis sworn statement of the opinion of the value, and examined other, witnesses. They had a duty to perform, in its nature judicial; that duty'they assumed, and from evidence'then satisfactory to them, they fixed the value at what they believed to be its true value'; and although in the light of subsequent events, the county auditor or tax inquisitor may think the value should have been placed higher, we are of the opinion the annual city board -had jurisdiction, and that on the-facts as shown, their action is conclusive -and final for the years they acted. Would it be contended, if Robert Sherard, Jr., had in bis annual return to the assessor affixed the value at $2Ü pér share, and the annual city board increased it to $25 (the amount they did affix), that the action would not have been conclusive?
If the action of the city board is not conclusive. - what,' in the light of the evidence, would bave’be'en a fair valuation at the time this stock should have been returned fo"1''taxation ? In 1890 Sherard held 2343 shares of the par value'of $50 each; he made a sworn return to the assessor,and stated-the-amount of all moneys invested in -bonds, stocks, joint stock com *330 panies or otherwise — $26,450.00, which includes the stocks in controversy. The value at which they were placed in that return is not shown. Prior to 1891 the witnesses fix their value at from $10 to $14 per share, and it is testified that along the line of the road they were offering to sell and could not get $9 per share. Prior to 1891 they were not carried on the stock boards, the only sales being where someone along the line of the road could be found who would purchase. We find that for the year 1890 they were returned at their true value.
In April, 1891, there had been an appraisement of the stocks, and in 1892 and 1893 a judgment and proceeding in error was pending. If the judgment should have been reversed for a reason that would bar the proceeding, he would be entitled to receive stock in the consolidated company; if for some other error occurring in the proceeding, the matter would be re-tried. The testimony fixes the value of stock in the consolidated company during 1892 and 1893 at from $40 to $60 on shares of $100, and, it is testified, sales were made for less. From the testimony and the questions raised in the proceedings in error, we are of opinion that the value affixed by the annual city boards was at the time its full cash value, and probably more than any banker, broker or speculator would have given under the then state of the litigation and the then surrounding circumstances.
The injunction, so far as it relates to the sums placed upon the duplicates as additional taxes for 1890, 1891, 1892 and 1893, is made perpetual.
This leaves only the questions arising upon the return for 1894. At the time the return for taxation should have been made, the judgment had been affirmed by the Supreme Court, and the money paid to Sherard, and a portion of it invested in non-taxable bonds of the United States. Section 2737, Revised Statutes of Ohio, provides:
“Such statement shall truely and distinctly set forth * * Sixteenth: The monthly average amount or value, for *331 the time he held or controlled the same, within the preceding year,of all moneys, credits or other effects, within that time invested in, or converted into bonds or other securities of the United States or of this state, not taxed,, to the extent he may hold or control such bonds or securities on said day, preceding the second Monday of April, and any indebtedness created in the purchase of such bonds or securities shall not be deducted from the credits under the fourteenth item of this section.”
In Shotwell v. Moore, 45 Ohio St., 632, the syllabus is:
“1st. Subdivision 16 of section 2737, of the Revised Statutes of Ohio, which provides that the statement of each person required to list property, shall set forth ‘the monthly aveiage amount or value for the time he held or controlled the same, within the preceding year, of all moneys, credits, or other effects, within the time invested in, or converted into bonds or other securities of the United States,’ is not in conflict with section 3701 of the Revised Statutes of the United States, which provides that, ‘all stocks, bonds, treasury notes, and other obligations of the United States, shall be exempt from taxation by, or under state, municipal or local authority. ’
“2. The method provided in subdivision 16 of section 2737, for estimating the taxable value of property converted during the year into non-taxable securities, is not in conflict with section 2, of .article 12, of the constitution of the state, which requires that laws shall be passed, taxing all property by a uniform rule, according to its true value in money.”
This case of Shotwell v. Moore having gone to the Supreme Court of the United States, is reported in 129 United States 590. The syllabus is:
“A state may make the ownership of property subject to taxation, relate to any day or days or period of the year which it may think proper; and the selection of a particular day on which returns of their property for the purpose of assessment are to be made by taxpayers, does not preclude the making of assessments as of other periods of the year.”
*332 “Section 2737 of the Revised Statutes of Ohio, which requires the taxpayer to return to the assessor, as of the day preceding the second Monday in April in eaoh year, among other things, a statement of the ‘monthly average, amount or value, for the time he held or controlled the same, within the preceding year, of all moneys, credits, ■ or other effects, within that time invested in or converted into, bonds and other securities of the United States or of this state, not taxed, to the extent he may hold or control such bonds or securities on said day preceding the second Monday of April, and any indebtedness created in the purchase of such bonds or securities shall not be deducted from the credits under the fourteenth item of this section,’ does not tax the citizen for the greenbacks or other United States securities which he may have had at any time during the year, but taxes him upon the money, credits or other capital which he has had and used, according to the average monthly amount so held, and is not in conflict with 3701 of the Revised Statutes of the United States, exempting the obligations of the United States from taxation under state, municipal or local authority. ”
And Mr. Justice Miller, in the opinion, says:
“Section 2737 of the Ohio Statutes, which prescribes the character of the statement to be made by persons holding moneys, credits or investments, such as are described, and which are subject to taxation, declares that such statement shall truly and distinctly set forth, among other things, ‘moneys on hand or on deposit subject to order’ and ‘the amount of credits as hereinbefore defined.’ Subdivision 16 requires a statement of ‘the monthly average amount or value from the time he held or controlled the same, within the preceding year, of all moneys, credits, or ¿ther effects within that time invested in, or .converted into bonds or other securities of the United States or of this state, not taxed, to the extent he may hold or control such bonds or securities, on said day preceding the second Monday of April; and any indebtedness created in the purchase of such bonds or securities shall not be deducted from the credits under the fourteenth item of this section.’
“Of the right of the state of Ohio to make this provision we have no doubt. Its purpose is not to enable that state *333 to tax the securities of the United States, and to permit it to tax other investments, moneys on hand and on deposit subject to order, while it combines in the same exemption the securities of the general government and those of the state. We know of no principle which forbids that state from taking the whole period of the business year already passed as the bast means of ascertaining how much the taxpayer shall be required to pay on property which is admitted to be taxable, and how much he shall deduct from the nontaxable securities of the state and of the United States.
“As this was the method under which the plaintiff in error in this case was taxed, and as he was charged with no more than he was liable to pay under a wise.and equitable law, we do not see any error in the judgment of the Supreme Court of Ohio, and it is accordingly affirmed.”
In this case the auditor finds that the cost of the bonds or the amount invested, is $146,482.16, and he has, as he says in his testimony, taken a period of time less than the average. He has taken eleven-twelfths, where he would have been justified in taking .twelve-thirteenths, and he has added 50 per cent, to that, and placed it on the tax duplicate of 1895.
Section 2781, Revised Statutes of Ohio, provides:
“If any person whose duty it is to list property or make a return thereof for taxation, either to the assessor or to* the county auditor, shall in any year or years make a false return or statement, or shall evade making a return or statement, the county auditor shall, for each year, ascertain, as near as practicable, the true amount of personal property, moneys and credits, and investments that such person ought to have returned or listed, for not exceeding the five years next prior to the year in which the inquiries 'and corrections provided for in this and the next section are made,and to the amount so ascertained for each year he shall add fifty per centum, multiply the sum or sums thus increased by said, penalty, by the rate of taxation belonging to said year or years, and accordingly enter the same on the tax lists in his office, giving a certificate therefor to the county treasurer, who shall collect the same as other taxes.”
P. P. Lewis and J. Dunbar, for Plaintiffs.
E. E. Erslcine and John M. Cook, for Defendant.
The deceased failed for the year 1894 to return upon the blank furnished him by the assessor, and omitted to make any return as required by paragraph 16, section 2737, Revised Statutes. Whatever may be the practice as to the making or not making such return, or the opinions of individuals as to the propriety or constitutionality of the statute, it has been settled for us not only by our own Supreme Court, but approved and affirmed by the Supreme Court of the United States.
To so much as is placed on the duplicate as additional tax for 1894, the injunction is dissolved.
(Judge Laubie was present at the hearing, but left during the term, and did not participate in the consideration or decision of the case.)