.BALTIMORE & O. R. Co. *v.* ALLEN, Auditor, and others.

*(Circuit Court, W. D. Virginia.* August 30, 1884.)

1. TAXATION — ROLLING STOCK OF FOREIGN RAILROAD CORPORATION—WHERE TAXABLE.
   The rolling stock owned by a railroad company incorporated under the laws of one state, and employed in operating railroads leased by it in another state, is personal property, and taxable to the road in the state of its domicile and not in the state where it is so used.

2. SAME— BALTIMORE & OHIO RAILROAD COMPANY—TAXATION UNDER VIRGINIA STATUTE.
   The Baltimore & Ohio Railroad Company is a foreign corporation, and its rolling stock, used in operating leased roads in the state of Virginia, is not liable to taxation under the tax laws of that state.

Motion for Injunction.

*Sheffey & Bumgardner* and *Wm. B. Compton,* for plaintiff.

*Frank S. Blair,* Atty. Gen., for defendants.

PAUL, J.   The Baltimore & Ohio Railroad Company, a corporation under the laws of the state of Maryland, has for a number of years been the lessee of the following railroads in the state of Virginia, incorporated by various acts of the Virginia legislature, and owned by Virginia corporations, viz.: The Winchester & Potomac Railroad, the Winchester & Strasburgh Railroad, and the Strasburgh & Harrison-burg Railroad; the last named being part of the old Manassas Gap Railroad.   The said Baltimore & Ohio Railroad Company also works or operates the Valley Railroad from Harrisonburg to Staunton. None of these railroads, so leased and operated by the Baltimore & Ohio Railroad Company, own any rolling stock, but the same is furnished by the Baltimore & Ohio Company.   The domicile or home office of the Baltimore & Ohio Railroad Company is in the city of Baltimore, state of Maryland.   Section 20, chapter 119, of Acts of the Virginia Legislature, session 1881–82, prescribes the mode of assessing railroads and canals for purposes of taxation, and the following provision designates what property shall be taxed:

"Every railroad and canal company, not exempted from taxation by virtue of its charter, shall report annually on the first day of June, to the auditor of public accounts, all of its real and personal property of every description as of the first day of February of each year, showing particularly in what county or corporation such property is located, and classifying the same under the following heads: (1) Roadway and track or canal. bed. (2) Depots, depot grounds and lots, station buildings and fixtures, and machine-shops. (3) Real estate not included in other classes. (4) Rolling stock, including passenger, freight, cattle or stock, baggage, mail, express, sleeping, palace, and all other

cars owned by or belonging to the company; boats, machinery and equipments, houses and appurtenances occupied by lock-gate keepers and other employes. (5) Stores. (6) Telegraph lines. (7) Miscellaneous property."

The said railroad companies, the Winchester & Potomac, the Winchester & Strasburgh, the Strasburgh & Harrisonburg, and the Valley Railroads, made their reports to the auditor of public accounts as required, and were, by the board of public works, duly assessed on their roadways and tracks, depots, and other real estate owned by them. Their reports showed that they were not the owners of any rolling stock. On the ——— day of June, 1883, S. Brown Allen, auditor of public accounts for the state of Virginia, assessed the Baltimore & Ohio Railroad Company with taxes on its rolling stock, used on said roads, for the years from 1870 to 1881, inclusive, amounting in the aggregate, for 11 years, to the sum of $22,249.25, and on the ——— day of June, 1883, placed said taxes in the hands of J. Ed. Hamilton, treasurer of Augusta county, Virginia, for collection. On the ——— day of June, 1883, said Hamilton, treasurer, distrained certain property, such as engines, passenger cars, box cars, stock cars, etc., belonging to the Baltimore & Ohio Railroad Company, and on the refusal of said company to pay the taxes so levied for, advertised said property to be sold at public auction. To prevent this sale a restraining order was, on the petition of the Baltimore & Ohio Railroad Company, awarded on the ——— day of ———, 1883, by the judge of this circuit, inhibiting the said Hamilton, treasurer, from making sale of said property. It is, on a motion by the defendants, S. Brown Allen, auditor, and others, to dissolve this restraining order, that the court is called upon to decide the question as to the liability of the Baltimore & Ohio Railroad Company for the taxes levied on its rolling stock employed by it in its operation of the aforesaid railroads, leased by it in the state of Virginia.

The first question presented is the character of the property on which the tax is assessed. Is it realty or personalty, or does it fall within the definition of movable fixtures? The doctrine that the engines, cars, etc., used in operating a railroad, are movable fixtures, is not sustained by the current of authorities. It is in no sense real property, or savoring of the realty. That it is personal property cannot be successfully controverted, and therefore, as the subject of taxation, it is governed by the same general rules applicable to other personal property. "The weight of authority is that it is personal estate to be taxed to the road where it has its domicile." Burroughs, Tax'n, 186. That it may, by the legislature, be treated as real estate is admitted; that the legislature of Virginia has not so treated it is conceded; that the Baltimore & Ohio Railroad Company is a foreign corporation is not disputed. We think that a careful reading of the act of the Virginia legislature (chapter 119, Sess. Acts 1881-82) shows that the tax to be imposed on the real and personal property of railroads is to be imposed on home railroads—those char-

tered under the laws of Virginia. Section 20 of the act says: "Every railroad and canal company, not exempted from taxation by virtue of its charter, shall report annually," etc. The act means, "by virtue of its charter,"—the provisions of a charter granted by the legislature of Virginia. The legislature of Virginia would have no right or power to make such a provision as to a foreign corporation. A charter granted a foreign corporation, exempting it from taxation,. can only avail it within the dominion of the sovereign granting the charter; when it carries its property into the dominions of another sovereign it becomes subject to the tax laws of the latter. The same clause of the section (20) referred to, requires the report to show particularly in what county or corporation such property *is located.* In the twenty-second section of the same act, providing for the taxation of express, transportation, steam-ship, sleeping-car companies, etc., said companies are required to return the value of all real and personal property owned by said company and persons, and located *within* said state, (Virginia.) And this view that the statute does not con-template the taxation of rolling stock not located in this state, but only temporarily within her borders, having its *situs* or location in another state, gathers strength from the fact that this is the construction given the statute by the predecessors of Auditor Allen, and of the board of public works of which he is a member. The act was passed by the legislature during the session of 1869–70, and no assessment of the rolling stock of the complainant, used in operating the railroads leased by it in Virginia, has ever been made until that made by Auditor Allen on the ——— day of June, 1883. It has been said that if a statute "be susceptible of the interpretation which has been put upon it by long usage, the courts will not disturb that construction." *Pochin* v. *Duncombe,* 1 H. & N. 856.

The construction we have given the statute is in harmony with the current of decisions, for the authorities are numerous and clear that "a corporation is taxable for its personal property at its domicile, which is the state of its creation, and within that state, in the town where it has its principal office or place of business." Burroughs, Tax'n, 186. Let us apply this principle to the facts presented in this cause. The evidence shows that the complainant, the Baltimore & Ohio Railroad Company, was chartered by the state of Maryland; that its home or principal office is in the city of Baltimore, in that state, and that said city is the head-quarters for all of its rolling stock used on its main and branch lines; that the trains are run solid from Lexington (formerly from Staunton, Virginia) to Baltimore; that none of its rolling stock is assigned permanently to service in the state of Virginia, nor to the four roads operated by it in that state; that its rolling stock is used interchangeably upon its main line and branches in the states of Maryland, Virginia, West Virginia, Pennsylvania, and states west of the Ohio river, as the necessities of the service of the company may require.

In *Orange & A. R. Co.* v. *City Council of Alexandria*, 17 Grat. 186, where this question arose, JOYNES, J., delivering the opinion of the court, said:

"Upon this state of facts I am of opinion that the railroad company must be considered as having its residence or domicile in Alexandria, and that its rolling stock, though in daily use upon the road and absent from the city the greater part of the time, is to be considered as belonging there, and is liable to taxation by the city."

The *Philadelphia, W. & B. R. Co.* v. *Appeal Tax Court of Baltimore City*, 50 Md. 415, 416, was the case of a foreign corporation doing business in Maryland, with its principal office or place of business in Philadelphia, though owning extensive leasehold estates in the city of Baltimore, and part of its line being chartered under the laws of Maryland. The court said:

"It is plain the rolling stock of the company cannot have permanent location or legal *situs* at two or more places at the same time, unless so declared by positive statute; and conceding that it should be located at the domicile or home or principal office of the corporation, it is clear, as the law now stands, there can be no well-founded claim to assess this property in Baltimore. The engines and cars of the appellant have no abiding-place or permanent location in this state, so as to become incorporated with the other permanent property of the state, and are only brought here transiently while employed in the operations of the road. And whether such engines and cars be regarded as personal property, or as so far partaking of the nature of realty as to justify the denomination of them as movable fixtures, the principle equally applies. They have the movable quality, and, in the absence of positive legislation fixing a different *situs*, they can have no other given them by construction than the home or principal office of the corporation."

See, also, *Appeal Tax Court of Baltimore City* v. *Northern Cent. Ry. Co.* 50 Md. 417.

The decisions of the supreme court of the United States in the cases of *Hays* v. *Pacific Mail Steam-ship Co.* 17 How. 596, and *St. Louis* v. *Ferry Co.* 11 Wall. 425, rest upon facts very similar to those presented in the cause before us. A leading case on this question—the power to tax the rolling stock of a railroad elsewhere than where it has its actual *situs*—is *Pacific R. Co.* v. *Cass Co.* 53 Mo. 31, 32. The result of that decision is that the rolling stock of a railroad company which is in a county which is not the legal residence of the corporation, and which is only in transit or temporarily there, is not taxable in such county, but is to be assessed and taxed in the county which is the legal residence of such corporation. The learned attorney general, counsel for the defendants, has strongly argued that to determine the *situs* or location of the rolling stock assessed with tax is in the city of Baltimore, and therefore not liable to such assessment, would be to allow foreign corporations to evade the tax laws of the state of Virginia, and to escape the burdens borne by the railroad companies chartered by that state. The answer is, that is a question to be dealt with by the legislature of Virginia. The line of unquestioned decisions to which we have referred makes plain the duty of

the court. The opinion of the court is that the *situs* or location of the rolling stock employed by the Baltimore & Ohio Railroad Company in operating the said railroads leased by it in the state of Virginia is in Baltimore city, state of Maryland; the same is not liable to assessment for taxes under the tax laws of Virginia; that the motion to dissolve the injunction order heretofore awarded the complainant must be overruled, and that said injunction order be perpetuated.

There are some questions of minor importance raised in the pleadings, but as they do not affect the merits of the controversy it is not necessary for the court to pass upon them.

A decree will be passed in accordance with this opinion.

BOND, J., of the circuit court, concurring.

---

PERSONALTY OF RAILROADS. Where railroad property is taxed as other property of the state, its personalty should be assessed to the company which owns it. *Portland, S. & P. R. Co.* v. *Saco*, 60 Me. 196; *Pacific R. Co.* v. *Cass Co.* 53 Mo. 17; *State* v. *Person*, 32 N. J. Law, 134; *Orange & A. R. Co.* v. *Alexandria*, 17 Grat. 176. So the rolling stock of a railroad is personalty, to be taxed to the road which owns it at the place of its domicile, (*Kennedy* v. *St. Louis, V. & T. H. R. Co.* 62 Ill. 395; *Randall* v. *Elwell*, 52 N. Y. 521,) even though leased out to another company. *Appeal Tax Court* v. *Pullman P. C. Co.* 50 Md. 452; *Same* v. *Northern Cent. R. Co.* 50 Md. 417. See cases on this subject collected in 1 Desty, Tax'n, 399.—[ED.