CITY OF FORT WORTH v. SOUTHLAND GREYHOUND LINES, INCORPORATED.

No. 6119.  Decided November 28, 1933.
(67 S. W., 2d Series, 361.)

14

*R. E. Rouer, J. M. Floyd, R. B. Young, Jr.,* and *Geo. C. Kemple,* all of Fort Worth, for appellant.

It appearing from the record that appellee is a motor transportation company engaged in carrying passengers for hire between the City of Fort Worth and other cities in Texas, and

that it is necessary in conducting its business to keep and use a certain amount of motor equipment in Fort Worth which said motor equipment, being tangible personal property, was subject to taxation in the City of Fort Worth, although the domicile and principal place of business of said company is in the City of San Antonio, Texas. Union Refrigerator Transit Company v. Commonwealth of Kentucky, 199 U. S., 194, 26 Sup. Ct., 36, 118 Ky., 131, 80 S. W., 490; Cooley Taxation (4th Ed.) vol. 2, sec. 451; Guaranty Life Ins. Co. v. City of Austin, 108 Texas, 209, 190 S. W., 189; City of Tyler v. Coker (Civ. App.), 124 S. W., 729; City of Galveston v. Guffey Petroleum Co. (Civ. App.), 113 S. W., 585; R. S., 1925, art. 7153.

It appeared from appellee's petition for injunction that it had a full, adequate and complete remedy at law, but if that fact had not appeared on the face of said petition still it would not be entitled to relief by injunction because it did not negative all essential matters that would be necessary for it to allege in order to establish a right of action. Gillis v. Rosenheimer, 64 Texas, 243; Hagar v. Reclamation Dist. No. 108, 111 U. S., 701, 4 Sup. Ct., 663, 28 L. Ed., 569; Gorham Mfg. Co. v. State Tax Com. of N. Y., 266 U. S., 265, 45 Sup. Ct., 80; Rio Grande Ry. Co. v. Scanlan, 44 Texas, 649; Red. v. Johnson, 53 Texas, 288.

*Cantey, Hanger & McMahon,* all of Fort Worth, and *Sylvan Lang,* of San Antonio, for appellee.

The rolling stock of a motor transportation company, incorporated under the laws of Texas and having its principal office in the State and operating between numerous large cities of the State, which is not only subject to being shifted, but is, in fact, actually required to be shifted from one operating division to another, is subject to taxation only in the county where its principal office is located. 61 C. J., sec. 309, p. 322; 61 C. J., sec. 664, p. 545; Gulf, C. & S. F. Ry. Co. v. City of Dallas (Com. App.), 16 S. W. (2d) 292; City of Tyler v. Coker (Civ. App.), 124 S. W., 729; Callender Nav. Co. v. Pomeroy, 61 Or., 343, 122 Pac., 758.

The property in dispute had not acquired a situs for taxation purposes in the City of Fort Worth, and the attempt to collect a tax on such property by the taxing authorities of the City of Fort Worth was therefore void. Court v. O'Connor, 65 Texas, 334; Druesdow v. Baker (Com. App.), 229 S. W., 493; Rowland v. City of Tyler (Com. App.), 5 S. W. (2d) 756.

The Assessor and Collector of Taxes for the City of Fort Worth has the duty of making assessments on all properties.

for taxation purposes in that city, and the Board of Equalization has no right to add property to the assessment rolls, but only has the duty to equalize, correct and adjust the taxes assessed on said roll by the Assessor and Collector of Taxes. Davis v. Burnett, 77 Texas, 3, 13 S. W., 613.

Where a board of equalization assesses a tax which in fact is void from its inception, a court of equity in the State of Texas will enjoin the sale of any property which is seized to satisfy such void tax, without regard to the question of whether or not the complainant has pursued his legal remedies. Lively v. Missouri, K. & T. Ry. Co., 102 Texas, 545, 120 S. W., 852; Hogg v. Sheffield (Civ. App.), 38 S. W. (2d) 353; Lum v. City of Bowie, 18 S. W., 142; Cooley on Taxation (4th Ed.) vol. 4, sec. 1640.

MR. PRESIDING JUDGE SHORT delivered the opinion of the Commission of Appeals, Section B.

This case is before the Supreme Court on two certified questions from the Court of Civil Appeals of the Second Judicial District. The statement accompanying the questions, in view of the fact that the Court of Civil Appeals has written a correct opinion disposing of the case, the nature of the case being fully stated therein may be summarized as follows: The appellee is a domestic corporation duly authorized to engage in the business of transporting passengers by means of busses from one point to another over the State, having its domicile in San Antonio, Bexar County, Texas, where it renders for taxation all of its personal property, and where it pays the taxes due thereon. The appellant, through its duly authorized agent, seized one of these busses and advertised it for sale to pay certain sums which the appellant claims were due for taxes to the City of Fort Worth, by reason of the fact that some of these busses, averaging four in number, were kept by appellee in the City of Fort Worth in carrying on its business. The appellee sued out an injunction and upon the trial of the case the district court made the injunction permanent, and upon appeal to the Court of Civil Appeals, the judgment of the trial court was affirmed, but upon consideration of the motion for rehearing the following questions were certified to the Supreme Court:

1. "Can the motor busses of the plaintiff that are necessary to be kept and used in the City of Fort Worth for the purpose of maintaining its runs and schedules be taxed by the City of Fort Worth, or must they be taxed in the City of San

Antonio, the admitted domicile and principal place of business of appellee?

2. "Did the Board of Equalization of the City of Fort Worth have the power to add the plaintiff's motor busses to its tax roll?"

The certificate from the Court of Civil Appeals contains the following:

"It is not contended by appellant that the same cars stay in Fort Worth, but that the same number of cars stay in Fort Worth during the year. The plaintiff predicates its case upon the theory that the rolling stock of a motor bus transportation company, such as it was operating, incorporated under the laws of the State of Texas, owning busses that were being operated between numerous large cities, and which busses were subject to being shifted from one operating division to another, were subject to taxation only in the city where its principal office was located; the position of the plaintiff being that the very nature of its business precluded the idea of its motor equipment and busses acquiring a situs for taxable purposes at any other place than the domicile and principal office of plaintiff.

"Defendant contends that in view of the fact that the company maintains division headquarters in Fort Worth with machine shops and division officers permanently located there, it is necessary to have a certain number of busses there permanently in order to take care of the runs and regular schedules in and out of said city."

The opinion of the Court of Civil Appeals is reported in 67 S. W. (2d) 354 (see below).

■ We approve the opinion of the Court of Civil Appeals, and recommend that the certified questions be answered in accordance therewith.

The opinion of the Commission of Appeals answering the certified questions is adopted and ordered certified.

C. M. CURETON, Chief Justice.

OPINION OF COURT OF CIVIL APPEALS, by

MR. JUSTICE BUCK, follows:

"The Southland Greyhound Lines, Inc., filed this suit praying for an injunction against the Mayor, City Attorney, and the City Tax Collector and Assessor and the City Manager of the City of Fort Worth, to restrain said officers, and especially J. M. Floyd, acting as Deputy Tax Collector, from selling one

motor bus, upon which said tax collector had levied to satisfy alleged delinquent taxes and accrued penalties alleged to be due. It was alleged that the plaintiff was a motor transportation company operating motor busses between El Paso and Dallas, San Antonio and Fort Worth, San Antonio and Dallas, and intermediate points, pursuant to authority granted by the general laws of the State of Texas under certificates of convenience and necessity issued by the Railroad Commission of the State of Texas. Plaintiff denied that it was indebted to the City of Fort Worth in any sum for delinquent taxes, personal or otherwise, in that all of the property of the plaintiff was duly and legally rendered for taxation to the City of San Antonio, Texas, and within the time prescribed by the city charter and ordinances of the City of San Antonio, Texas, and that plaintiff is only required to pay personal property taxes under the Constitution and laws of the State of Texas at the place of its domicile and principal place of business, towit, San Antonio, Bexar County, Texas. That none of the personal property of plaintiff has acquired a situs for taxable purposes within the territorial limits of the City of Fort Worth.

This application was presented to the Honorable Bruce Young, Judge of the District Court of the 48th Judicial District, and he entered his fiat thereon, requiring plaintiff to make a bond in the sum of $2500.

The defendant filed an answer, consisting of a general demurrer and certain special exceptions, some of which may be hereafter quoted. Defendants generally and specifically denied the allegations in plaintiff's petition and specially pleaded that plaintiff had no cause of action either in equity or at law, in that the provision of the charter of the City of Fort Worth provided, Chapter 25, Section 32, that the action of the Board of Equalization shall be final in all cases unless an appeal is taken therefrom to the District Court of Tarrant County, and that no appeal had been taken to the action of the Board of Equalization in making the assessment against relator, or plaintiff.

Plaintiff filed a supplemental petition, in which it pleaded that the action of the Board of Equalization in making the assessment against the motor busses alleged to be habitually kept in Fort Worth was void from inception because the property sought to be taxed, except that upon which taxes are admittedly due, could only be legally rendered and paid by plaintiff to the City of San Antonio. That the property sought to be taxed and upon which the Board of Equalization assessed an arbitrary valuation of $55,000.00, had not acquired a situs for

taxable purposes in Fort Worth, Tarrant County, Texas. Plaintiff further admitted that it owed for taxes on its office furniture and the money it had on hand the first day of January, 1930, and its stock of tools and supplies used in its garage and repair shop. There is no question made that the amount assessed on the rendition made by plaintiff, appellee here, is correct. The taxes due on the rendition made of the taxes of the appellee, during the trial of this case, were tendered in court.

The trial court in its judgment decided that the sum of $115.50 was due, the amount paid into the registry of the court, and that defendants take nothing by its cross action over against the plaintiff for taxes in the principal sum of $1364, being the difference in the amount of the taxes levied on the property rendered by the plaintiff and the valuation fixed by the Board of Equalization. A judgment was rendered in favor of the City of Fort Worth for $115.50, the amount shown to be due on the property rendered by appellee. From this judgment the City of Fort Worth and its officers have appealed.

OPINION.

There are two questions that must be decided in properly disposing of this case: (1) Is the rolling stock of a motor transportation company, incorporated under the laws of and having its principal office in the State of Texas, which operates between numerous large cities in the State of Texas, and with its domicile at San Antonio, due and payable in Bexar County, or a portion of which is due and payable at Fort Worth, in Tarrant County; (2) Was the assessment upon the motor cars alleged to be in Fort Worth on January 1, 1930, and the amount of taxes thereon, alleged to be due by the holding of the Board of Equalization, fixed and made final by the failure of the appellee to appeal from said action? We will discuss these questions in due order.

Appellant urges that tangible personal property can acquire a situs for taxation purposes in a county other than the residence of the owner, and that a city through which a motorbus company operates or in which it has one of its division offices would have the right to levy a tax upon such rolling stock, based upon the proportion which such rolling stock bears to the total rolling stock of the company, or such rolling stock as is used in connection with operations out of such division point. The Constitution of Texas, Article 8, section 11, provides:

"All property, whether owned by persons or corporations,

shall be assessed for taxation, and the taxes paid in the county where situated."

Article 7153, Revised Civil Statutes of Texas, 1925, provides:

"All property, real and personal, except such as is required to be listed and assessed otherwise, shall be listed and assessed in the county where it is situated; and all personal property subject to taxation and temporarily removed from the State or county, shall be listed and assessed in the county of the residence of the owner thereof, or in the county where the principal office of such owner is situated."

In Guaranty Life Ins. Co. of Houston v. City of Austin, 108 Texas, 209, 190 S. W., 189, opinion by Judge Phillips, it was held that certain securities which had been voluntarily left on deposit with the state treasurer in Austin for several years, were taxable by the City of Austin. This decision was evidently based upon the finding that such securities were voluntarily listed on deposit with the state treasurer in Austin for several years.

In Vol. 26, R. C. L., sec. 246, it is said:

"Rolling Stock of Railroads. It has been held that the cars, engines and other rolling stock of a railroad are so intimately connected with the purposes and uses of the railroad track that it is within the power of the legislature to treat it as real estate for the purposes of taxation; but in the absence of a positive enactment to the contrary rolling stock is personal property, and taxable as such in the state in which the railroad was incorporated.

As between the different counties, cities and towns of a state, the right of the legislature to regulate the situs of rolling stock for purposes of taxation is of course plenary. When no special provision has been made it is usually held that the situs for the taxation of the rolling stock of a railroad is the city or town in which the railroad company's principal office is located and that railroad rolling stock has no situs for purposes of taxation in towns in which its trains stop only temporarily to receive and discharge freight and passengers."

37 Cyc., page 963, says:

"Rolling stock and other such equipment of a railroad is sometimes apportioned among the several counties through which the road passes, for the purpose of local taxation, in proportion to the mileage of the road in each county. But in the absence of a statute, authorizing such a distribution, property of this kind is taxable only at the domicile of the corporation, that is, its head office or principal place of business."

See McQuillin on Municipal Corporations, sec. 2550, p. 324, in which it is said:

"But personal property merely temporarily within a municipality is usually not taxable."

Vol. 10, American and English Annotated Cases, page 356, says:

"It is the general rule that in the absence of a statute providing otherwise, the rolling stock of a steam railroad company has its situs for the purpose of taxation at the principal office of the company, as it is personalty and its situs is that of its owner. Under this rule it has been held that such property is taxable at the principal office in the domicile of the company. Baltimore etc. R. Co. v. Allen, 22 Fed. Rep., 376, affirmed Marye v. Baltimore, etc. Ry. Co., 127 U. S. 117, 8 U. S. Sup. Ct. Rep., 1037; Appeal Tax Ct. v. Western Maryland R. Co., 50 Md., 274; Philadelphia, etc. R. Co. v. Appeal Tax Ct., 50 Md., 397; Appeal Tax Ct. v. Northern Cent. R. Co., 50 Md., 417.

In Philadelphia, etc. Ry. Co. v. Appeal Tax Ct., 50 Md., 397, the court said: 'It is plain the rolling stock of the company cannot have permanent location or legal situs at two or more places at the same time, unless so declared by positive statute; and conceding that it should be located at the domicile, or home, or principal office of the corporation, it is clear, as the law now stands, there can be no well founded claim to assess this property in Baltimore. The engines and cars of the appellant have no abiding place or permanent location in this State, so as to become incorporated with the other permanent property of the State, and are only brought here transiently while employed in the operations of the road. And whether such engines and cars be regarded as personal property, or as so far partaking of the nature of realty as to justify the denomination of them as movable fixtures, the principle equally applies. They have the movable quality, and in the absence of positive legislation fixing a different situs they can have no other given them by construction than the home or principal office of the corporation.'

The rule thus announced with reference to the situs for the purposes of taxation of the rolling stock of a railroad company has been held to be applicable to the taxation of sleeping and palace cars hired out to a railroad company. Appeal Tax Ct. v. Pullman Palace Car Co., 50 Md., 452.

The same rule is applicable to the taxation of the rolling stock of a steam railroad company within a state. It is held that such property of the company has its situs for the pur-

poses of taxation within the state at the residence or principal offices of the company, unless it is provided otherwise by statute. Dubuque v. Illinois Cent. R. Co., 39 Iowa, 56; Pacific R. Co. v. Cass County, 53 Mo., 17; Orange etc. R. Co. v. Alexandria, 17 Grat. (Va.) 176; Atlantic, etc. R. Co. v. Lyons, 101 Va., 1, 42 S. E. Rep., 932. And see the following cases which recognize this rule: Sangamon, etc. R. Co. v. Morgan County, 14 Ill., 163; State v. Person, 32 N. J. L., 134, affirmed 32 N. J. L., 566; State v. Severance, 55 Mo., 378."

In the case of Sangamon, etc. R. Co. v. Morgan County, 14 Ill., 163, 55 Am. Decisions, 497, it is held that the county of Morgan, and the town of Jacksonville in said county, did not have the power to assess the rolling stock of a railroad, because of its transitory character, and that the rules for assessment for city purposes are the same as those for county purposes. See Gulf, C. & S. F. Ry. Co. v. City of Dallas, 16 S. W. (2d) 292, by the Commission of Appeals. This case involved the question as to whether or not switch engines which were kept permanently in Dallas had acquired a situs for taxation in that city. The Court of Civil Appeals had held that these switch engines had been kept in the yards in Dallas for several years and had been permanently dedicated to a local use, and that the City of Dallas had the authority to assess said switch engines for tax purposes. The Commission of Appeals held that the words "where situated," as used in the Constitution, Art. 8, sec. 11, means for taxation purposes, and that the common law maxim, *mobilia sequuntur personam*, is still the basic principle upon which the taxation of personal property rests. The opinion says:

"In addition to the legislative interpretation that the provision of the Constitution in question did not fix the situs of rolling stock for municipal taxation, where the same was actually located, we find that the Attorney General's department, charged with the duty of advising taxing authorities throughout the state, has for a long period of years given the same construction to such constitutional provision. This long-continued departmental construction is also entitled to be given weight in determining the true intent and meaning thereof. City of Denison v. Municipal Gas Co., 117 Texas, 291, 3 S. W. (2d) 794; Harris County v. Crooker, 112 Texas, 450, 248 S. W., 652."

In connection with this holding of the Attorney General's office, it may be well here to state that in an opinion to Wayne Somerville, County Attorney, Wichita Falls, Texas, and by departmental opinion dated May 5, 1930, addressed to Dick Hold,

District Attorney of McLennan County, it was said:

"The rolling stock of a motor transportation company which is operated through five counties is taxable only at the prinpical office of the owner."

In City of Covington v. Pullman Company, 121 Ky., 218, 89 S. W., 116, the Court of Appeals of Kentucky, the court of last resort, sustained a tax upon three Pullman cars on the basis that there were at all times three cars in the yards at Covington, which were being made ready to go out on their trips. Said tax was, however, sustained only because of a prior legislative enactment of Kentucky, and the court expressly differentiated this character of property from the property of a resident of Kentucky, in holding:

"While the personal property of a resident of this state must be given in for taxation by the owner in the county of his residence, the personal property of a non-resident of the state must be assessed in the county where it is situated— where it has a situs in the state."

The same court held, in Commonwealth v. Union Refrigerator Transit Company, 118 Ky., 131, 80 S. W., 490, that 2000 refrigerator cars belonging to the Union Refrigerator Transit Company, which had its home office in Jefferson County, Kentucky, were all properly taxable in said county, and not merely the proportion of said cars which were in use in said state. The court said in part:

"With the question of whether or not the modern tendency of legislative enactment and judicial construction is to trench upon the legal maxim, *'Mobilia sequuntur personam,'* we have nothing to do; and it may be therefore freely conceded, for the purposes of this case, that all that is said in this regard by the counsel for appellee is true. Our state upholds and enforces the ancient fiction in all its original severity, and we do not understand that it is open to us to destroy by construction the integrity of a statute, the words of which are so plain that 'he who runs may read.' And whatever may be said as to the judicial utterances of other jurisdictions, our court has uniformly held that, for the purpose of taxation, the situs of personal property of every description is the domicile of the owner. The case of Wren v. Boske, Sheriff, 24 Ky. Law Rep., 1780, 72 S. W., 279, presented this state of facts: The appellant Wren resided in Scott County. He owned a farm in Kenton County, upon which he had horses, mules, cattle and sheep, which had been there for eight years. This personal property he listed with the assessor of Scott County, where he resided, but, notwithstanding this, it was assessed for taxation in Ken-

ton County, and he instituted an action to restrain the Sheriff of Kenton County from selling it for taxes. * * *

'We are referred to a number of decisions holding that personal property of non-residents of the state, which has obtained a situs in the state, may, if the Legislature so provides, be taxed in that state; and the same rule, no doubt, would apply between the different counties of the same state if the Legislature so provided. But the question, after all, is one of legislative intent.'

The court then held that the property could only be taxed at the domicile of the owner. * * *

In the case of Langdon-Creasy Company v. Trustees of Owenton Common School District, etc., 116 Ky., 562, 76 S. W., 381, 25 Ky. Law Rep., 823, it appears that the corporation had its domicile in Covington, Ky. It also had a retail grocery store in Owen County, Ky., where its goods were sought to be taxed for local purposes. This court held—approving Wren v. Boske, Sheriff—that the personal property of the corporation was only taxable in the county of its residence. It was said: 'As appellant corporation has a legal residence, and not being in the class of corporations which are required to report to the auditor, it must be assessed in the same manner as that of a natural person. It seems to us that there is no escape from this conclusion. The Legislature has the unquestioned authority to fix the situs of property for the purpose of taxation. * * * The case of Wren v. Boske is made to turn upon the legislative intent, and this case is likewise made so to turn.' In the case of Gates v. Barrett, 79 Ky., 295, it is said: 'In general, movable property is to be assessed for taxation at the place of the owner's residence.' See, also, Boske, Sheriff, v. Security Trust & Safety Vault Co., 22 Ky. Law Rep., 181, 56 S. W., 524; Covington v. Wayne, 22 Ky. Law Rep., 826, 58 S. W., 776; and City of Louisville v. Sherley, 80 Ky., 71. In Cooley on Taxation (3rd Ed.) vol. 1, p. 86, the rule is stated:

'If a person is domiciled within the state, his personalty, in contemplation of law, has its situs there also, and he may be taxed in respect of it at the place of his domicile. * * * However, the maxim *mobilia sequuntur personam* is not of univeral application, does not rest on any Constitutional foundation, and gives way before express laws; and a state may at its option, impose taxes on tangible personal property within its limits, irrespective of the residence or allegiance of the owner, although this would not be true of property merely passing through the state, and not having a situs therein.' Id. 673: 'The proper place for the taxation of a corporation in respect

of its personalty is the place of its principal office, unless some other rule is prescribed by statute.' In Burroughs on Taxation, p. 186, the rule is thus stated: 'A corporation is taxable for its personal property at its domicile, which is the state of its creation, and within that state, in the town where it has its principal office or place of business.' "

See Board of Supervisors of Elizabeth City County v. City of Newport News, 106 Va., 764, 10 Amer. and Eng. Ann. Cases, 354, where it was held that it had long been a settled law in Virginia that a railroad company must be considered, for the purposes of taxation, as having its residence or domicile at the place where its chief or principal office is located, and that its rolling stock, though in daily use upon the road and absent from such locality the greater part of the time, is to be considered as belonging there, and liable to taxation by the municipality in which its principal office is located. The opinion said:

"We might agree with the learned commission that it would be more equitable, looking to the interest of the several municipalities through which the railway passes, to distribute the revenue derived from this course; but, in the absence of legislative enactment upon the ubject, the rolling stock of the Newport News and Old Point Railway and Electric Company is properly taxed in the county of Elizabeth City, so long as that county continues to be the home of its chief or principal office."

The question as to the situs of vessels for taxation is also somewhat analogous to the question now before us. In Southern Pacific Co. v. Commonwealth of Kentucky, 222 U. S., 63, 56 U. S. Law Ed., 96, the court said:

"Since, therefore, an artificial situs for purposes of taxation is not acquired by enrollment nor by the marking of a name upon the stern, the taxable situs must be that of the domicile of the owner, since that is the situs assigned to tangibles where an actual situs has not been acquired elsewhere. The ancient maxim which assigns to tangibles, as well as intangibles, the situs of the owner for purposes of taxation has its foundation in the protection which the owner receives from the government of his residence, and the exception to the principle is based upon the theory that if the owner, by his own act, gives to such property a permanent location elsewhere, the situs of the domicile must yield to the actual situs and resulting dominion of another government. * * *

In Hays v. Pacific Mail Steamship Company (17 How. U. S., 596) it appeared that the ships of the company were the property of a New York corporation, and that they were registered at the port of New York, where the capital represented by them

was assessed for taxation. They were regularly and continuously employed on the Pacific coast, and were refitted and repaired from time to time at Benicia, in the State of California. Concerning these ships, which the State of California sought to tax upon the theory that they had an actual situs in that state, the court said:

"These ships are engaged in the transportation of passengers, merchandise, etc., between the city of New York and San Francisco and different ports in the territory of Oregon. They are thus engaged in the business and commerce of the country, upon the highways of nations, touching at such ports and places as these great interest demand, and which hold out to the owners sufficient inducements by the profits realized or expected to be realized. And so far as respects the ports and harbors within the United States, they are entered and cargoes discharged or laden on board, independently of any control over them, except as it respects such municipal and sanitary regulations of the local authorities as are not inconsistent with the Constitution and laws of the General Government, to which belongs the regulation of commerce with foreign nations and between the States.

'Now, it is quite apparent that if the State of California possessed the authority to impose the tax in question, any other state in the Union, into the ports of which the vessels entered in the prosecution of their trade and business, might also impose a like tax. It may be that the course of trade or other circumstances might not occasion as great a delay in other ports on the Pacific as at the port of San Francisco. But this is a matter accidental, depending upon the amount of business to be transacted at the particular port, the nature of it, necessary repairs, etc., which in no respect can affect the question as to the situs of the property, in view of the right of taxation by the State.

'Besides, whether the vessel, leaving her home port for trade, and commerce, visits, in the course of her voyage or business, several ports, or confines her operations in the carrying trade to one, are questions that will depend upon the profitable returns of the business, and will furnish no more evidence that she has become a part of the personal property within the State, and liable to taxation at one port than at the others. She is within the jurisdiction of all or any one of them, temporarily, and for a purpose wholly excluding the idea of permanently abiding in the State, or changing her home port.' "

We believe that the same rule holds with reference to motor busses as to railroads with a principal office in the state, and

vessels operating between ports, though we have not been cited to a case determining the situs for taxation purposes of the rolling stock of a motor bus company. In the case of Avery et al. v. Interstate Grocery Co., 248 Pac., 340, the Supreme Court of Oklahoma affirmed a judgment whereby the Interstate Grocery Company procured a permanent injunction against officials of the State of Oklahoma from seizing certain motor vehicles. The court held that in order to impose a license tax upon foreign trucks and other commercial motor vehicles using the public highways of Oklahoma, engaged in interstate commerce, but being sent from time to time on business into various counties in Oklahoma, such vehicles must either have an actual situs in the state as at common law, or a situs for taxation purposes created by statute. In discussing the question of "situs" the court in part said:

"While it may be stated as a general rule of law that personal property has no situs except that of the domicile of the owner, yet this doctrine yields whenever it is applied to the taxation of personal property (The Prairie Cattle Co. v. Williamson, 5 Okla., 488, 49 Pac., 937) ; that is, it is not necessary that the owner should reside within the state to render his personal property situated within the state liable to taxation. * * *

Now, in order to tax the cars in controversy as personal property, they must have actual situs at common law in this state, or a situs for taxation purposes created by the Legislature in order to be 'property in this state,' and thus subject to taxation."

We conclude that the appellee was not liable for taxes assessed against its rolling stock in Tarrant County, it having paid all of its taxes dues in San Antonio, Bexar County, as the pleadings and evidence show.

Was the assessment upon the motor cars alleged to be in Fort Worth on January 1, 1930, and the amount of taxes thereon, alleged to be due by the holding of the Board of Equalization, fixed and made final by the failure of the appellee to appeal from said action? Chapter 20, sec. 1 of the charter of the City of Fort Worth provides:

"The Assessor and Collector of Taxes shall make up the assessments of all property for taxation in the City, including franchise, license, and occupation taxes, and make rolls therefor, and, on completion of said rolls, he shall report same to the City Council for their action. He shall have power and authority to administer any and all oaths in connection with the

duties of his office, as required by the Council or otherwise by law. All real property assessed for taxes by the Assessor and Collector shall be listed and enrolled by number of blocks and lots or part of lots, according to recorded plats or the official map of the city of Fort Worth, or by survey of the City Engineer, or by other means adopted by the Council or employed by the Assessor to accurately describe the said property assessed. It shall also be the duty of the City Assessor and Collector to make out lists of all real property which has not been given for assessment, either for current or former years, or which has been left off the tax rolls, and to assess the same in the name of the owner if he be known, or if not by number of blocks or lots or parts of lots, so as to define and describe with reasonable accuracy, and such action may be taken to enforce the collection of the taxes so assessed, if the same are not paid, as is herein prescribed for the collection of taxes on property given in for assessment. When supplementing the rolls with the taxes on property omitted from previous rolls, the taxes shall be estimated and charged against the said delinquent property according to the ordinances levying taxes for the years that the said real estate was omitted from the rolls."

Section 2 of the said charter provides for the appointment of a Board of Equalization by the City Council, to be composed of the assessor and collector and two other members to be selected by the council, who are well acquainted with real estate values, one of whom shall be designated as Chairman of said Board and the other as Vice-Chairman. And that section further provides:

"It shall be the duty of the Council, as soon as the assessment of rolls of taxes due the City are completed, to refer the same to the Board of Equalization, whose duty it shall be to equalize the taxes assessed on said rolls and to make all necessary correction and adjustments to that end; and, in addition to the powers granted them by this Charter, they shall also have the same powers and perform the same duties as the County Commissioners' Courts of this State in regard to the assessment of property for taxation and the equalization thereof, and shall be governed in their procedure and acts in this respect as now provided by the laws of this State relating to the equalization of State and County taxes by said Commissioners' Courts. In addition to the foregoing, the said Board shall have the power, when sitting, to compel the production of all books, documents, stocks, bonds and other papers pertinent to the investigation, to be produced before them in the investigation of the taxable values of any person or persons,

firm or corporation having or owning property within the corporate limits of the City subject to taxation. Said Board shall have full power to correct any mistake or injustice or inequality in the assessment of property, the rendition of same, or in the payment of taxes, and shall have power to correct such mistakes and make redress therefor; and the said Board may add to the rolls any property omitted therefrom, either for the current year or for previous years, and lawfully taxable within said City. A majority of the said Board shall constitute a quorum for the transaction of business. The City Secretary or his assistants shall be ex-officio the Clerk of said Board. The two members of the Board selected by the City Council, while serving on the said Board of Equalization, shall receive such compensation as may be provided for them by the Council. The City Assessor and Collector shall receive no additional pay for his work. Immediately upon completion of said work the said Board of Equalization shall place their certificate upon the said rolls, with a brief statement of the work done by them, and return the said rolls to the Council, who shall thereupon either approve the said rolls as returned to them by the Board, or make such corrections and changes therein as they may deem advisable, and thereupon adopt the same as the assessment rolls to be used for the collection of taxes for the current year."

It will be noted that this provision of the City Charter has the following language:

"And, in addition to the powers granted them by this Charter, they shall also have the same powers and perform the same duties as the County Commissioners' Courts of this State in regard to the assessment of property for taxation and the equalization thereof, and shall be governed in their procedure and acts in this respect as now provided by the laws of this State relating to the equalization of State and County taxes by said Commissioners' Court. In addition to the foregoing, the said Board shall have the power, when sitting, to compel the production of all books, documents, stocks, bonds and other papers pertinent to the investigation, to be produced before them in the investigation of the taxable values of any person or persons, firms or corporations having or owning property within the corporate limits of the City subject to taxation. * * * And the said Board may add to the rolls any property omitted therefrom, either for the current year or for previous years, and lawfully taxable within said City."

It appears that the Commissioners' Court does not have

authority to assess taxes on unrendered property. See Cook, Tax Collector, v. Galveston, H. & S. A. Ry. Co., 5 Texas Civ. App., 644, 24 S. W., 544, where it is said:

"It is only where property has not been rendered for taxation that it can be assessed and placed on the unrendered roll, and this must be done by the assessor. Article 4711."

In Texas & P. Ry. Co. v. Harrison County, 54 Texas, 119, it is held that when a question of valuation for taxation has been once regularly referred to the proper board of equalization, the valuation of that tribunal is final. But we find no authority, either statutory or otherwise, to sustain the contention that the County Board of Equalization is vested with the authority generally to assess taxes. Apparently, the only authority it possesses is to adjust errors to raise or lower the values stated in the rendition, etc. Nor has the commissioners' court, apparently, any authority to make assessments on property.

■ We conclude that the situs for taxation purposes of the rolling stock or busses of the appellee was in San Antonio, Bexar County, and that the tax assessor or the Board of Equalization had no authority to assess the tax in Fort Worth. In his findings of fact, the trial court found that the situs for taxation purposes of the motor busses was in San Antonio and that the taxes had all been paid for 1930 in San Antonio. In City of Breckenridge v. Pierce (Civ. App.), 251 S. W., 316, opinion by Chief Justice Conner of this court, it was held that an injunction was a proper remedy restraining the officers of the City of Breckenridge from the collection or attempting to collect certain taxes and for making levy therefor, or for assessing penalties for refusing payment of such taxes.

In Davis, Tax Collector v. Burnett, 77 Texas, 3, it was held not necessary for one who seeks to enjoin the collection of taxes wholly illegal to show that he had first applied for relief to the board of equalization, and an injunction was sustained. To the same effect is Lively v. Missouri, K. & T. Ry. Co., 102 Texas, 545, 120 S. W., 852.

■ We believe that, insofar as the Texas courts are concerned, one who is assessed taxes does not have to pay the tax and then bring suit to recover the same as they have to do in the Federal Court. For authorities showing the Federal Court's necessary procedure to prevent illegal taxation see Indiana Mfg. Co. v. Koehne, 188 U. S., 681, 23 Sup. Ct., 452; Singer Sewing Machine Co. v. Benedict, 229 U. S., 481, 33 Sup. Ct., 942.

■ While the Texas courts allow the recovery of taxes illegally required and paid, yet they also hold that an injunction is a proper remedy to prevent an illegal assessment or a sale of the property under an illegal assessment. See Kinney v. Zimpleman, 36 Texas, 554; Galveston Gas Co. v. The County of Galveston, 54 Texas, 287, showing that a citizen may recover taxes illegally demanded and paid. See Kerr v. City of Corsicana, 35 S. W., 694, affirmed in City of Corsicana v. Kerr, 89 Texas, 461, 35 S. W., 794.

We conclude that under the holdings of our courts, and especially the Supreme Court, an injunction was the proper remedy to restrain the collection of taxes illegally assessed.

The judgment below is affirmed."