**CITY OF AMARILLO et al., Appellants,**

v.

**Sid CARTER, d/b/a Carter Trucking, Appellee.**

No. 7358.

Court of Civil Appeals of Texas.

Amarillo.

May 18, 1964.

178 ■

Kenneth W. Gentry, Amarillo, for appellants.

Neal, Hazlewood & Wolfram, Amarillo, for appellee.

CHAPMAN, Justice.

This is an appeal from a take-nothing judgment for Sid Carter d/b/a Carter Trucking rendered by the trial court against four taxing units; City of Amarillo, Amarillo Independent School District, Amarillo College District, and Amarillo Hospital District in a suit tried to the court for collection of alleged delinquent ad valorem taxes on trucks and trailers used by Carter in hauling cattle.

During the years involved Carter lived in Randall County within the Canyon Independent School District and outside of all the appellant taxing districts. During the three years involved, 1958, 1959, and 1960, Randall County and Canyon Independent School District assessed the equipment for taxes and Carter paid the taxes due on the assessment. The hauling equipment was utilized over fifteen states and was kept moving in so far as he could keep it in use on hauls. No effort was made by the taxing authorities to show the equipment was located within the boundaries of their districts on January 1 of any of the various years.

Before 1958, Mr. Carter was engaged in the feedlot business at Western Stockyards in Amarillo, Potter County, Texas, and within the territory of the three taxing units. He owned no real estate in connection with the operation and the feedlot business was a completely separate business to his hauling. Also, before 1958 he operated a service station on the Stockyards property, which he leased from Western Stockyards Company. Before 1958 he sold his interest in that project.

While operating the service station, he owned a small building built on skids called the "Dog House" which was used as a shelter for truck drivers employed by many truck operators to get them out of the weather and out of the way of the service station attendants. Also, in connection with the service station operation it was necessary to provide considerable parking space for transient trucks, which area was located behind the service station on Western Stockyards property. Those trucks operated by individuals and companies in other counties and states were parked in the area just as were Carter's trucks. The "Dog House" was sold when he disposed of his interest in the service station.

The basic constitutional authority in Texas for levying and collecting taxes such as here involved is contained in Article 8, Section 11 of the Constitution of Texas, Vernon's Ann.St., providing in part as follows: "All property, whether owned by persons or corporations shall be assessed for taxation, and the taxes paid in the county where situated."

The Constitutional provision with respect to taxation was implemented in August of 1876 by the first legislature which met after our Constitution was adopted by the people on February 15, 1876. In the first codification of 1879 Article 4676 provided: "All property, real and personal, except such as is required to be listed and assessed otherwise, shall be listed and assessed in the county where it is situated," thus using language very similar in meaning to that used in the Constitution.

The next codification in 1895 carried in Article 5068 the exact language as that just quoted in Article 4676 of the 1879 codification. Then in the codification of 1911 those articles just named were carried over into Article 7510 and enlarged to provide for listing and assessment of personal property temporarily removed from the state or county.

In the codification of 1925, our present statute, Article 7153, the successor statute to 7510 of the 1911 codification carries the same language as Article 7510 of the 1911 codification.

■ The one point of error raised by the taxing units is that the trial court erred in rendering judgment for appellee because the evidence shows as a matter of law that the taxable situs of the trucks and trailers in question was within appellant's taxing districts for the years 1958, 1959, and 1960. To justify such contention appellants contend the common law rule of "mobilia sequuntur personam" [1] has been abrogated, arguing that because the trucks and trailers were located at the Western Stockyards part of the time that constituted the situs for the purpose of taxation under Article 8, Section 11 of the Constitution above quoted.

"The Constitution is not to be given a technical construction, but must be construed in an equitable manner, so as to carry out the great principles of the government." Great Southern Life Ins. Co. v. City of Austin, 112 Tex. 1, 243 S.W. 778; Nolan v. San Antonio Ranch Co., 81 Tex. 315, 317, 16 S.W. 1064.

The first case just cited also holds that state constitutions shall be construed in the light of the common law.

Article 8, Section 11 of our Constitution states the taxes shall be paid where the property is situated. "Since it had reference to the taxing power, it evidently meant property *where situated* for the purposes of taxation under the general principles of law as then understood," [2] the common law. Under such law "mobilia sequuntur personam" was a well-established maxim and such personal property was taxable at the domicile of the owner regardless of its location. Great Southern Life Ins. Co. v. City of Austin, supra.

The City of Fort Worth attempted to collect taxes on part of the rolling stock of Southland Greyhound Lines, a corporation domiciled in San Antonio but with division headquarters in Fort Worth with machine shops and division officers permanently

located there and a certain number of buses there permanently in order to take care of regular schedules in and out of the city. Our Supreme Court affirmed the Court of Civil Appeals holding to the effect that the bus company was not liable for taxes assessed against rolling stock in Tarrant County, it having paid all of its taxes due in San Antonio, Bexar County. City of Fort Worth v. Southland Greyhound Lines, 123 Tex. 13, 67 S.W.2d 361 (Com.App. opinion adopted).

The City of Fort Worth in the case just cited showed a stronger case for the right to tax than the taxing units here, in our opinion. Mr. Carter maintained no shops or garages here for maintenance of his equipment and had the equipment parked at the Stockyards only while waiting for cattle to load following the sales at the Stockyards just as other cattle haulers all over the country. Since Western Stockyards was the "biggest one point in the world for distribution of stocker and feeder cattle" and Mr. Carter owned many hauling units it was natural that some of his equipment was always there waiting to be loaded with cattle from the Stockyards. His contracts for hauling were made almost exclusively by telephone at his home at nights and his office at the Stockyards was kept in connection with his cattle feeding project and interests other than hauling cattle. The record on Truck No. 17 for one month was introduced as representative of his hauling. It showed 17,577 miles for October 1958 with 4,036 miles in Texas; 4,428 miles in Oklahoma; 7,629 miles in Colorado; 9,094 miles in New Mexico; and 2,038 miles in Kansas, and the out of state earnings were much more than in Texas.

The second clause of our present Article 7153 provides " * * * all personal property, subject to taxation and temporarily removed from the State or county, shall be listed and assessed in the county of the

1. Movables follow the person.

2. Great Southern Life Ins. Co. v. City of Austin, supra.

residence of the owner thereof, or in the county where the principal office of such owner is situated."

Clearly the property sought to be taxed here is movable property temporarily out of the county and state such as contemplated in the second clause of Article 7510, Revised Statutes, 1911 and its successor article, 7153.

Since our Supreme Court in the Great Southern Life Insurance Co. case above cited held the constitutional provision is to be construed according to common law principles, leaving the field open for reasonable legislative action, let us now consider the second clause of Article 7153.

 We believe it fair to say that the weight of authority indicates that transient movable property under the common law has a tax situs at the domicile of the owner. As stated in the Great Southern Life case: "This is still the basic principle upon which the taxation of personal property rests." See also City of Forth Worth v. Southland Greyhound Lines, supra; Commonwealth v. Union Refrigerator Transit Co., 118 Kentucky 131, 80 S.W. 490, 81 S.W. 268; Chemical Express Company v. City of Roscoe, Tex.Civ.App., 310 S.W.2d 694 (writ refused).

It is true these cases just cited involved corporations and our case involves an individual. There seems to be no Texas cases distinguishing the phrases in the second clause of Article 7153 "in the county of the residence of the owner thereof" and "county where the principal office of such owner is situated." Appellee has projected three theories of construction of the phrases. Since the legislative intent is to incorporate the common law rules, we believe the reference to the county of residence and the county of the principal office applies to the common law rule that an individual is domiciled at his residence and a corporation at the place of its principal office as suggested in his second projection. In any event, there is plenty of probative

evidence in this case by which the trial court, the fact-finding body, could have impliedly found that Mr. Carter's principal office for his cattle hauling was at his residence where practically all his contracts for such hauling were made.

There was no request here for findings of fact or conclusions of law. In the absence of such request the trial court's judgment implied all necessary fact findings in support of the judgment. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 23 A.L.R.2d 1114; McWilliams v. Muse, 157 Tex. 109, 300 S.W.2d 643.

Even if it be said that the court's judgment involved mixed findings of facts and law, the judgment being supported by sufficient facts is binding on this court. Taliaferro v. Cundiff, 33 Tex. 415; Lamm & Co. v. Brannon, Tex.Civ.App., 244 S.W. 256.

Accordingly, the judgment of the trial court is in all things affirmed.